STATE OF NORTH CAROLINA v. GEORGE TRUITT WALSTON

No. COA99-1119

(Filed 17 October 2000)

1. **False Pretense— false representation with intent to deceive—sufficiency of evidence**

    The trial court did not err by denying defendant pastor's motion to dismiss the charge of obtaining property by false pretenses under N.C.G.S. § 14-100 from a church even though defendant contends there was insufficient evidence to establish that defendant made a false representation with intent to deceive, because the evidence viewed in the light most favorable to the State reveals that: (1) defendant obtained a check on the church's account for one stated purpose and then used it for another purpose the very same day; (2) defendant set up a new account by using the check to transfer almost all of the church's money to an account for which he had sole access; (3) defendant failed to tell anyone at the church about the new account; (4) defendant transferred church funds to his own account to reimburse his own company and others for work on the church which the church had not authorized; and (5) defendant used the church's money to purchase items for his own use.

2. **False Pretense— obtaining anything of value as a result of a false representation—sufficiency of evidence**

    The trial court did not err by denying defendant pastor's motion to dismiss the charge of obtaining property by false pretenses under N.C.G.S. § 14-100 from a church even though defendant contends there was insufficient evidence to establish that defendant obtained anything of value as a result of a false representation, because the evidence viewed in the light most

STATE v. WALSTON

[140 N.C. App. 327 (2000)]

favorable to the State reveals that: (1) defendant obtained, at least initially, sole access to $10,000 of the church's funds as a result of his misrepresentation; and (2) although the church may have ultimately benefitted in the form of remodeling done on the church, defendant spent to benefit his own company and himself.

### 3. False Pretense— obtaining or attempting to obtain value from another—sufficiency of evidence

The trial court did not err by denying defendant pastor's motion to dismiss the charge of obtaining property by false pretenses under N.C.G.S. § 14-100 from a church even though defendant contends there was insufficient evidence to establish that defendant obtained or attempted to obtain value from another, because the evidence viewed in the light most favorable to the State reveals that: (1) defendant did receive value, which was the initial sole access to $10,000 of the church's funds, and defendant did not have authorization from the church to use those funds; and (2) defendant did not set out any evidence that he acquired the $10,000 lawfully and later converted it, and the State's evidence shows defendant actually unlawfully acquired the $10,000 as a result of his false representation.

### 4. False Pretense— indictment—no fatal variance

The trial court did not err by denying defendant pastor's motion to dismiss the charge of obtaining property by false pretenses under N.C.G.S. § 14-100 from a church even though defendant contends there was a fatal variance between the indictment and the proof at trial based on the State's alleged failure to show that defendant obtained $10,000 in U.S. currency or that he had sole access to the church's checking account, because: (1) it is not legally significant whether the thing gained by the party perpetrating the criminal act is in the same form as it was when taken by false pretense from the owner; and (2) the purported variance did not go to an essential element of the offense since whether defendant received $10,000 in cash or deposited $10,000 in a bank account, he obtained something of monetary value which is the crux of the offense.

Appeal by defendant from judgment entered 18 March 1999 by Judge Henry V. Barnette, Jr. in Harnett County Superior Court. Heard in the Court of Appeals 23 August 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane L. Oliver, for the State.*

*L. Holt Felmet and Duncan B. McCormick for defendant-appellant.*

HUNTER, Judge.

George Truitt Walston ("defendant") appeals his conviction of one count of obtaining property ($10,000.00 in United States currency) by false pretenses ("false pretenses") in violation of N.C. Gen. Stat. § 14-100. Defendant assigns as error the trial court's failure to (1) grant his motion to dismiss on the grounds that the State failed to present substantial evidence supporting each essential element of the offense of false pretenses; and (2) allow his motion to dismiss on the grounds that there was a fatal variance between the indictment and the proof at trial. We find no error.

The State's evidence at trial tended to show the following: Defendant was the pastor of the Mission Temple Community Baptist Church ("church") in Chalybeate Springs, North Carolina from 1994 to 1996. Defendant also owned a subcontracting business named W&W Sales. Defendant had prior convictions for larceny in Pitt County in 1992 and three counts of false pretenses in Wake County in April 1996.

On 12 August 1996, one week after the death of the church's treasurer, defendant approached Gail McLean, the church's new treasurer. Defendant asked Ms. McLean whether the premium for the church's insurance had been paid, but Ms. McLean did not know. Defendant offered to find out and said that he needed a check to do so. Defendant said that if the premium had not been paid, he would use the check to pay it. Ms. McLean signed a blank check from the church's Fidelity Bank account ("Fidelity account"), wrote "church insurance" on the memo line, and then gave the check to defendant to be used to pay the insurance premium if necessary. The church's insurance premium had, in fact, been previously paid in June 1996.

Later on 12 August 1996, defendant opened a BB&T checking account ("BB&T account #1") in the name of the church using the check, made payable to the church, that he had received from Ms. McLean. Defendant made an initial deposit in the amount of $10,000.00 by transferring that amount from the church's Fidelity account. Defendant listed the address for the new account as his own.

Defendant had an existing account at BB&T in the name of "George Truitt Walston, Jr., d.b.a. W&W Sales" ("W&W Sales' BB&T account"). The address for that account was also his own.

Over the course of the next few weeks, there were a series of withdrawals from the church's BB&T account #1 subsequently followed by deposits in W&W Sales' BB&T account, evidenced by successive bank transaction numbers. Defendant also wrote checks from the church's BB&T account #1 to pay people who did work on the church. The State's evidence tended to show that defendant wrote these checks made payable to his business and others without proper authorization. Work, i.e. remodeling, was being done at the church at this time, but the State introduced evidence that defendant had not been authorized to contract for the work.

When Ms. McLean discovered the $10,000.00 withdrawal from the church's Fidelity account, she notified the church members, and they immediately scheduled a meeting with defendant. At that meeting, defendant stated that he opened the account at BB&T because he thought the church's Fidelity account would be frozen as a result of the death of the church's treasurer. Soon after this meeting, Ms. McLean received the church's BB&T account #1 check book. She started writing checks on this account to pay the church's bills. Ms. McLean did not however notice that three checks had already been written on the account. Ms. McLean also never received the church's BB&T account #1 starter check book from defendant. Several starter checks from the church's BB&T account #1, written and cashed, matched deposits into W&W Sales' BB&T account both in time and amounts.

In October 1996, defendant opened another account at BB&T ("BB&T account #2"), under the name Mission Temple Community Church Building Fund, again using his own address. On 7 October 1996, a deposit of $2,500.00 was made into that account from funds from the church's BB&T account #1. During this period, defendant also wrote several counter-checks from the church's BB&T account #1. Ms. McLean never received bank statements or canceled checks from the church's BB&T account #1. The church members then held a second meeting with defendant. At this meeting, defendant promised to supply the bank records and receipts, but he failed to ever do so.

The State's evidence tended to show that the total amount transferred from the church's BB&T account #1 to the W&W Sales'

BB&T account was approximately $6,905.33. The total amount transferred from the church's BB&T account #1 to the church's BB&T account #2 was $2,500.00. There was also a $514.00 counter-check drawn on the church's BB&T account #1 made payable to BB&T that the bank could not trace. Defendant testified that he purchased a printer, a gas heater, heaters for the church, and a sound system during this time.

The State charged defendant with one count of obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100 by a true bill of indictment returned 21 July 1997. Defendant was tried before a jury at the 15 March 1999 Criminal Session of Superior Court of Harnett County, the Honorable Henry V. Barnette, Jr., presiding. On 18 March 1999, the jury returned a verdict finding defendant guilty of false pretenses, and he received a sentence of ten to twelve months imprisonment. Defendant gave notice of appeal on 18 March 1999.

[1] In his first assignment of error, defendant contends that the trial court erred by failing to grant his motion to dismiss on the grounds that the State failed to present substantial evidence supporting each essential element of the offense of false pretenses. We disagree.

In considering a motion to dismiss, "the question presented is whether the evidence is legally sufficient to support a verdict of guilty on the offense charged, thereby warranting submission of the charge to the jury." *State v. Thomas*, 65 N.C. App. 539, 541, 309 S.E.2d 564, 566 (1983). "[T]he trial court must determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of such offense." *State v. Serzan*, 119 N.C. App. 557, 560, 459 S.E.2d 297, 300 (1995), *cert. denied*, 343 N.C. 127, 468 S.E.2d 793 (1996). "[T]he trial court must examine the evidence 'in the light most favorable to the State, and the State is entitled to every reasonable inference which can be drawn from the evidence presented; all contradictions and discrepancies are resolved in the State's favor.' " *State v. Forbes*, 104 N.C. App. 507, 510, 410 S.E.2d 83, 85 (1991), *review denied*, 330 N.C. 852, 413 S.E.2d 554 (1992) (quoting *State v. Morris*, 102 N.C. App. 541, 544, 402 S.E.2d 845, 847 (1991)). "The trial court's function is to decide whether the evidence will permit a *reasonable inference* that the defendant is guilty of the crime charged. The trial court is not required to determine that the evidence excludes every reasonable hypothesis of innocence before denying defendant's motion to dismiss." *State v. Serzan*, 119 N.C. App. at 560, 459 S.E.2d at 300 (citations omitted).

STATE v. WALSTON

[140 N.C. App. 327 (2000)]

Pursuant to N.C. Gen. Stat. § 14-100, our Supreme Court has defined the offense of false pretenses as "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980).

First, defendant claims that the State failed to present substantial evidence of the first two elements of false pretenses evinced in *Cronin*: (1) that he made a false representation, (2) that was intended to deceive. We do not agree that is the case *sub judice*.

An essential element of the crime of obtaining property by false pretenses is, "that the act be done 'knowingly and designedly . . . with intent to cheat or defraud.' " *State v. Hines*, 54 N.C. App. 529, 532-33, 284 S.E.2d 164, 167 (1981) (quoting N.C. Gen. Stat. § 14-100 (Supp. 1998)). In deriving intent, this Court has stated that, "[a] person's intent is seldom provable by direct evidence, and must usually be shown through circumstantial evidence." *State v. Compton*, 90 N.C. App. 101, 104, 367 S.E.2d 353, 355 (1988). " '[I]n determining the presence or absence of the element of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged . . . .' " *State v. Hines*, 54 N.C. App. at 533, 284 S.E.2d at 167 (quoting *State v. Norman*, 14 N.C. App. 394, 399, 188 S.E.2d 667, 670 (1972)).

At trial, the State offered the following evidence of circumstances to establish that defendant made a false representation with intent to deceive: the recent death of the church's treasurer, defendant's act in obtaining a check on the church's account for one stated purpose and then using the check for another purpose the very same day, his setting up a new account by using the check to transfer almost all of the church's money to an account which he had sole access, his failure to tell anyone at the church about the new account, his transfer of church funds to his own account to reimburse his own company and others for work on the church which the church had not authorized, and his use of the church's money to purchase items for his own use. Considering the evidence in the light most favorable to the State, we find that the State established that defendant made a false representation with the intent to deceive.

**[2]** Defendant next raises causation and asserts that the State failed to present substantial evidence that he obtained anything of value as a result of a false representation. Again we disagree.

To show that a defendant committed the offense of obtaining property by false pretenses, the State must prove that there is a causal relationship between the alleged false representation and the obtaining of money, property, or something else of value. *State v. Davis*, 48 N.C. App. 526, 531, 269 S.E.2d 291, 294-95, *review denied and appeal dismissed*, 301 N.C. 237, 283 S.E.2d 134 (1980). The gist of the offense is the attempt to obtain something of value from the owner thereof by false pretense. *State v. Wilson*, 34 N.C. App. 474, 476, 238 S.E.2d 632, 634, *review denied and appeal dismissed*, 294 N.C. 188, 241 S.E.2d 72 (1977).

Defendant contends that he did not obtain anything of value merely by obtaining a blank check and using the check to open a church checking account. Defendant further argues that his subsequent use of the church's account was not value obtained as a result of the alleged false representation. The State's evidence tended to show that defendant obtained as a result of his misrepresentation sole access, at least initially, to $10,000.00 of the church's funds, which, although the church may have ultimately benefitted in the form of remodeling done on the church, he spent to benefit his own company and himself. Again, considering the evidence in the light most favorable to the State, we agree that the State proved causation.

**[3]** Finally, defendant asserts that the State failed to present substantial evidence that he obtained or attempted to obtain value from another, the fourth element of false pretenses set out in *Cronin*, above. Furthermore, defendant contends that the blank check had no material value; the new checking account was in the church's name; and he, as the church's pastor, continued to have an obligation to use those funds in a manner authorized by the church. Defendant's arguments are unpersuasive.

Obtaining or attempting to obtain value is an essential element of the charge of obtaining property by false pretenses. *State v. Cronin*, 299 N.C. at 242, 262 S.E.2d at 286. N.C. Gen. Stat. § 14-100 describes value rather broadly as, "any money, goods, property, services, chose in action, or other thing of value . . . ." N.C. Gen. Stat. § 14-100 (1999). Taken in light of defendant's earlier argument, we agree with the State that defendant did receive value, the initial sole access to $10,000.00

of the church's funds, and he did not have authorization from the church to use those funds.

In the alternative, defendant interjects the argument that he obtained the church's property pursuant to a trust relationship, and only later wrongfully converted it, thus is liable for embezzlement if any crime. Our Supreme Court has held "that to constitute embezzlement, the property in question initially must be acquired lawfully, pursuant to a trust relationship, and then wrongfully converted." *State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 166 (1990). "On the other hand, to constitute false pretenses the property must be acquired unlawfully at the outset, pursuant to a false representation." *Id.* at 578, 391 S.E.2d at 166-67. "[S]ince property cannot be obtained simultaneously pursuant to both lawful and unlawful means, guilt of either embezzlement or false pretenses necessarily excludes guilt of the other." *Id.* at 578, 391 S.E.2d at 167. "Where . . . there is substantial evidence tending to support both embezzlement and false pretenses arising from the same transaction, the State is not required to elect between the offenses." *Id.* at 579, 391 S.E.2d at 167.

Here, defendant sets out no evidence that he acquired the $10,000.00 lawfully and later converted it. In the alternative, the State's evidence tended to show that defendant actually unlawfully acquired the $10,000.00 as a result of his false representation. The State pursued defendant under the theory of false pretenses, and the jury subsequently convicted upon that theory. Therefore, we find that the State proved each essential element of false pretenses, and the trial court did not err in denying defendant's motion to dismiss.

[4] Next, defendant combines two assignments of error, and assigns error to the trial court's failure to allow his motion to dismiss on the ground that there was a fatal variance between the indictment and the proof at trial in that the State failed to show that defendant obtained $10,000.00 in U.S. currency or that he had sole access to the church's BB&T checking account #1. Again, we find no error.

"It is an elementary rule in the criminal law that a defendant must be convicted, if at all, of the particular offense alleged in the bill of indictment." *State v. Gibson*, 169 N.C. 318, 320, 85 S.E. 7, 8 (1915). Specifically in regards to the crime of false pretenses, "[i]t is the general rule that the thing obtained . . . must be described with reasonable certainty, and by the name or term usually employed to describe it." *Id.* " '. . . [T]he evidence in a criminal case must correspond with

STATE v. WALSTON

[140 N.C. App. 327 (2000)]

the allegations of the indictment which are essential and material to charge the offense. . . .' " *State v. Simmons*, 57 N.C. App. 548, 551, 291 S.E.2d 815, 817 (1982) (quoting 7 Strong's N.C. Index 3d *Indictment and Warrant*, § 17 at 162). "[A] variance which is not essential is not fatal to the charged offense." *State v. Qualls*, 130 N.C. App. 1, 8, 502 S.E.2d 31, 36 (1998), *aff'd*, 350 N.C. 56, 510 S.E.2d 376 (1999). " 'A variance will not result where the allegations and proof, although variant, are of the same legal signification.' " *State v. Simmons*, 57 N.C. App. at 551, 291 S.E.2d at 817-18 (quoting *State v. Craft*, 168 N.C. 208, 212, 83 S.E. 772, 774 (1914)).

The indictment which charged defendant in this case alleged that defendant had obtained "$10,000.00 in United States Currency." Defendant proclaims that the State did not present evidence to show that he ever cashed the $10,000.00 check at Fidelity Bank or that he ever obtained $10,000.00 in U.S. currency.

The closest similarity to the case at bar in North Carolina is *State v. Cronin*, 299 N.C. 229, 262 S.E.2d 277. In *Cronin*, the indictment stated that the defendant had received "currency of the United States in the value of . . . []$5,704.54[]," but the proof showed that the defendant received a bank loan, which included a $4,900.00 cashier's check, $500.00 to pay off a previous note, and $304.54 for credit life insurance. *Id.* at 234, 262 S.E.2d at 281. The indictment was challenged on other grounds, but the conviction was upheld. *Id.*

"It is not legally significant whether the thing gained by the party perpetrating the criminal act is in the same form as it was when taken by false pretense from the owner." *State v. Wilson*, 34 N.C. App. 474, 476, 238 S.E.2d 632, 634, *review denied and appeal dismissed*, 294 N.C. 188, 241 S.E.2d 72 (1977). In *Wilson*, this Court found that there was no variance where the bill of indictment charged that the defendant obtained money from his employer and the evidence disclosed that he received a color television set and a clothes dryer from another party in exchange for the money pursuant to a prior agreement. *Id.*

To support his contention, defendant puts much reliance on *State v. Gibson*, 169 N.C. 318, 85 S.E. 7. This reliance however is misguided. In *Gibson*, our Supreme Court reversed a conviction for obtaining money under false pretenses where the indictment alleged that the defendant had obtained $350.00 and the evidence was that the defendant signed and obtained a promissory note for that amount. *Id.* The Court reasoned that there was a substantial difference between

STATE v. WALSTON

[140 N.C. App. 327 (2000)]

"money" and a "promissory note," and they concluded that the difference between the allegation and the evidence was fatal. *Id.* The outcome in *Gibson* can be distinguished from the case at bar, as that case was decided under prior North Carolina law. *Gibson* was decided in 1915 under Revisal of 1905, § 3432 (predecessor of N.C. Gen. Stat. § 14-100). This earlier false pretense statute made indictable the obtaining by a false pretense,

> any money, goods, property, or other thing of value, or any bank note, check, or order for the payment of money, . . . or on any treasury warrant, debenture, certificate of stock, or public security, or any order, bill of exchange, bond, promissory note, or other obligation, either for the payment of money or for the delivery of specific articles, with intent to cheat or defraud any person or corporation . . . .

Revisal of 1905, § 3432. In *Gibson,* the Court found that the law, "classifies those things the obtaining of which by a false pretense is made criminal, and carefully distinguishes between them, and assigns to each its own proper name and designation, as something separate and distinct from the others." *Gibson,* 169 N.C. at 321, 85 S.E. at 9. Whereas Revisal of 1905, § 3432 specifically named and indicated each thing one could be indicted for obtaining by a false pretense, our statute today, N.C. Gen. Stat. § 14-100, has been broadened to make indictable the obtaining by a false pretense any "money, goods, property, services, chose in action, or other thing of value . . . ." N.C. Gen. Stat. § 14-100.

By his own admission, defendant states "[i]t is undisputed that [he] used the blank check to open a bank account rather than to obtain cash and that the funds were directly deposited into the new checking account." The fact that the $10,000.00 was in U.S. currency or in a bank account does not change the premise that in either form the sum represented a $10,000.00 value. The State's evidence showed that defendant had sole access to this value for at least the period that he opened the account until he turned over the check book to the church members a few weeks later. Therefore, the purported variance did not go to an essential element of the offense because whether defendant received $10,000.00 in cash or deposited $10,000.00 in a bank account, he obtained something of monetary value which is the crux of the offense. There was no fatal variance between the indictment and the proof at trial, thus the trial court did not err in denying defendant's motion to dismiss.

By failing to set out assignments of error four through six for argument in his appellate brief, defendant is deemed to have abandoned these assignments of error. N.C.R. App. P. 28 (b)(5).

No error.

Judges LEWIS and WALKER concur.