IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-504

Filed: 17 March 2020

Buncombe County, Nos. 14CRS87781-83, 16CRS84995, 16CRS84997, 17CRS81903-04

STATE OF NORTH CAROLINA

v.

JUSTIN BLAKE CROMPTON, Defendant.

Appeal by defendant from judgments entered 25 October 2018 by Judge Marvin P. Pope, Jr. in Buncombe County Superior Court. Heard in the Court of Appeals 12 November 2019.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Brenda Eaddy, for the State.*
>
> *Office of the Appellate Defender, by Appellate Defender Glenn Gerding and Assistant Appellate Defender Sterling P. Rozear, for defendant-appellant.*

BERGER, Judge.

On October 25, 2018, Justin Blake Crompton ("Defendant") had his probation revoked and his suspended sentences activated after the trial court found that Defendant had absconded from supervision pursuant to N.C. Gen. Stat. § 15A-1343(b)(3a). As a result of his suspended sentences being activated, Defendant was ordered to serve a total of 36 to 102 months in prison for nine separate offenses. On appeal, Defendant argues (1) the trial court abused its discretion when it revoked Defendant's probation and activated his suspended sentences; (2) the trial court

abused its discretion when it declined to consolidate Defendant's active sentences upon revocation of probation; and (3) the judgments which revoked probation contained clerical errors regarding the violations found. We conclude that the trial court did not abuse its discretion when it revoked Defendant's probation or required Defendant to serve consecutive sentences. However, we remand for the limited purpose of correcting clerical errors in the written judgments.

Factual and Procedural Background

On April 24, 2017, Defendant pleaded guilty to nine separate charges involving breaking and entering, felony larceny, obtaining property by false pretense, carrying a concealed weapon, and possession of a firearm with an altered serial number. The trial court imposed six judgments with separate sentences totaling 36 to 102 months in prison. The trial court suspended Defendant's sentences and placed him on probation for 36 months.

On June 28, 2017, Defendant's probation officer filed violation reports which alleged several revocation-ineligible parole violations. On September 7, 2017, the trial court found that Defendant violated his probation and entered orders which modified the monetary conditions of Defendant's probation and required Defendant to serve ninety days in prison followed by ninety days of house arrest.

On May 23, 2018, additional violation reports were filed which alleged Defendant "willfully violated," among other things:

> 1. Regular Condition of Probation: General Statute 15A-1343(b)(3a) "Not to abscond, by willfully avoiding supervision or by willfully making the supervisee's whereabouts unknown to the supervising probation officer" in that, THE DEFENDANT HAS FAILED TO REPORT[] AS DIRECTED BY THE OFFICER, HAS FAILED TO RETURN THE OFFICER[']S PHONE CALLS, AND HAS FAILED TO PROVIDE THE OFFICER WITH A CERTIFIABLE ADDRESS. THE DEFENDANT HAS FAILED TO MAKE HIMSELF AVAILABLE FOR SUPERVISION AS DIRECTED BY HIS OFFICER, THEREBY ABSCONDING SUPERVISION. THE OFFICER[']S LAST FACE TO FACE CONTACT WITH THE OFFENDER WAS DURING A HOME CONTACT ON 4/16/19.

The matter came on for hearing on October 22, 2018. At the hearing, Defendant waived a formal reading of the violation reports and admitted the violations. Defendant's probation officer testified that Defendant had failed to report as directed by the officer, failed to return the officer's phone calls, and failed to provide the officer with a verifiable address.

The officer further testified that on May 14, 2018, he received a voicemail from Defendant informing the officer that he would not be attending an appointment that day. The probation officer returned Defendant's call and left a voicemail informing Defendant to report two days later. Defendant's probation officer subsequently initiated an absconding investigation. During this investigation, the officer went to Defendant's last known residence twice, called all of Defendant's references and contact numbers, called the local hospital, checked legal databases to see whether

Defendant was in custody, and called the vocational program Defendant was supposed to attend. According to the probation officer, Defendant also failed to report for scheduled appointments on May 16 and May 23 without contacting the probation officer.

After exhausting all available avenues of contacting Defendant, the probation officer entered an absconding violation on May 23, 2018. At the violation hearing, the officer recommended revocation of Defendant's probation and requested that the sentences not be consolidated.

At the close of the hearing, the trial court found that Defendant had "willfully and intentionally violated the terms and conditions of the probationary sentence by absconding." The court revoked Defendant's probation and activated Defendant's suspended sentences as originally entered on April 24, 2017. The trial court entered written judgments against Defendant on October 25, 2018. Defendant timely appeals.

## Analysis

On appeal, Defendant argues (1) the trial court abused its discretion when it revoked Defendant's probation and activated his suspended sentences; (2) the trial court abused its discretion when it declined to consolidate Defendant's active sentences upon revocation of probation; and (3) the judgments which revoked Defendant's probation contain clerical errors. We conclude that the trial court did

not abuse its discretion when it revoked Defendant's probation or when it declined to consolidate his active sentences. However, we remand for the limited purpose of correcting clerical errors in the written judgments.

I. Revocation of Probation and Activation of Suspended Sentences

This Court reviews the trial court's decision to revoke a defendant's probation for abuse of discretion. *State v. Murchison*, 367 N.C. 461, 464, 758 S.E.2d 356, 358 (2014). The State must produce sufficient evidence "to reasonably satisfy the trial court in the exercise of its sound discretion that the defendant willfully violated a valid condition upon which probation can be revoked." *State v. Newsome*, ___ N.C. App. ___, ___, 828 S.E.2d 495, 498 (2019) (*purgandum*). An abuse of discretion occurs "when a ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Maness*, 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) (citation and quotation marks omitted).

"Probation or suspension of sentence comes as an act of grace to one convicted of, or pleading guilty to, a crime." *Murchison*, 367 N.C. at 463, 758 S.E.2d at 358 (citation and quotation marks omitted). "A probation revocation proceeding is not a formal criminal prosecution," and an "alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt." *Id.* at 464, 758 S.E.2d at 358 (citations and quotation marks omitted).

N.C. Gen. Stat. § 15A-1343(b) provides the regular conditions of probation that apply to all defendants absent a specific exemption by the presiding judge. Relevant here, a probationer must:

> (3)     Report as directed by the court or his probation officer to the officer at reasonable times and places and in a reasonable manner, permit the officer to visit him at reasonable times, answer all reasonable inquiries by the officer and obtain prior approval from the officer for, and notify the officer of, any change in address or employment.
>
> (3a)    Not abscond by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer, if the defendant is placed on supervised probation.

N.C. Gen. Stat. § 15A-1343(b)(3), (3a) (2019).

A violation of Section 15A-1343(b)(3), *without more*, would not merit revocation of a defendant's probation unless the requirements of Section 15A-1344(d2) have also been met. *State v. Williams*, 243 N.C. App. 198, 204, 776 S.E.2d 741, 745 (2015). Pursuant to Section 15A-1344(d2), a defendant's parole may be revoked following a violation of Section 15A-1343(b)(3) where the defendant has already served two periods of confinement stemming from other parole violations. N.C. Gen. Stat. § 15A-1344(d2) (2019). However, where the trial court finds that a defendant has absconded in violation of Section 15A-1343(b)(3a), then the trial court may revoke probation and activate a defendant's suspended sentence based solely upon this finding. N.C. Gen. Stat. § 15A-1344(a); *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 498.

Under the plain language of Section 15A-1343(b)(3a), a defendant "absconds" by either (1) "willfully avoiding supervision" or (2) "willfully making the defendant's whereabouts unknown to the supervising probation officer." N.C. Gen. Stat. § 15A-1343(b)(3a). Although Section 15A-1343 does not define "willfully," the term is well-defined by our case law. "When used in criminal statutes, 'willful' has been defined as 'the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of the law.'" *State v. Bradsher*, 255 N.C. App. 625, 633, 805 S.E.2d 191, 196 (2017) (quoting *State v. Brackett*, 306 N.C. 138, 142, 291 S.E.2d 660, 662 (1982)). Additionally, we note that establishing a defendant's willful intent "is seldom provable by direct evidence and must usually be shown through circumstantial evidence." *State v. Walston*, 140 N.C. App. 327, 332, 536 S.E.2d 630, 633 (2000) (*purgandum*). In determining the presence or absence of the element of intent, the fact finder may consider the acts and conduct of the defendant and general circumstances existing at the time of the charged probation violation. *See id.* at 332, 536 S.E2d at 634.

Where a probation violation report specifically alleges that a defendant has absconded and the State brings forth competent evidence establishing the violation, then the State has met the burden required of Section 15A-1344(a) to warrant revocation of a defendant's probation. *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 499-500. Once the State has met its burden, the task falls upon the defendant to

demonstrate his inability to comply with the terms of his probation. *State v. Talbert*, 221 N.C. App. 650, 652, 727 S.E.2d 908, 910-11 (2012). Phrased differently, the task falls upon the defendant to demonstrate that his noncompliance was not "willful."

In this case, the probation officer's violation report specifically alleged, and the State presented competent evidence to support the trial court's finding, that Defendant violated the conditions of his probation by absconding. At the revocation hearing, the officer testified that Defendant had failed to report as directed by the officer, failed to return the officer's phone calls, and failed to provide the officer with a verifiable address. Based on these violations of Section 15A-1343(b)(3), the officer initiated an absconding investigation to determine whether Defendant was also in violation of Section 15A-1343(b)(3a).

Pursuant to this investigation, Defendant's probation officer exhausted all available avenues of contacting Defendant. At trial, Defendant's probation officer testified that he went to Defendant's last known residence twice, called all of Defendant's references and contact numbers, called the local hospital, checked legal databases to see whether Defendant was in custody, and called the vocational program Defendant was supposed to attend. While the investigation was ongoing, Defendant also failed to report to scheduled appointments on May 16 and May 23 without contacting the officer. Defendant never made contact with his probation officer, and the officer was completely unaware of Defendant's whereabouts from at

least May 14, 2018 to May 23, 2018. Based upon Defendant's actions, on May 23, 2018, the probation officer entered an absconding violation.

Importantly, as discussed above, the State does not bear the burden of proving that Defendant absconded beyond a reasonable doubt. *Murchison*, 367 N.C. at 464, 758 S.E.2d at 358. Rather, the State is merely required to produce sufficient evidence to satisfy the trial court in the exercise of its sound discretion. *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 498. Cognizant of this burden, we conclude the State presented sufficient competent evidence by which the trial court could find that Defendant absconded by willfully avoiding supervision or willfully making his whereabouts unknown to his probation officer in violation of Section 15A-1343(b)(3a).

Relying on *State v. Williams*, 243 N.C. App. 198, 776 S.E.2d 741 (2015), and *State v. Melton*, 258 N.C. App. 134, 811 S.E.2d 678 (2018), our dissenting colleague contends that the State has failed to present sufficient evidence to support a finding that Defendant absconded in violation of Section 15A-1343(b)(3a). The dissent's reliance on these cases is misplaced.

In *Williams*, our Court concluded that the State failed to carry its burden of showing a defendant had absconded from supervision where the violation report entered against the defendant failed to specifically allege a violation of Section 15A-1343(b)(3a) and the defendant's probation officer made telephone contact with the defendant on several occasions. 243 N.C. App. at 205, 776 S.E.2d at 746. In fact, in

that case, the State did not even argue that the defendant had absconded from supervision. *Id.* at 200, 776 S.E.2d at 743. Accordingly, *Williams* stands for the proposition that a defendant's probation violations, other than violations listed in Section 15A-1344(a), cannot serve as the basis for revocation of the defendant's probation unless the requirements of Section 15A-1344(d2) are also met. This conclusion is plainly consistent with the language of Section 15A-1344(a). N.C. Gen. Stat. § 15A-1344(a) ("The court may only revoke probation for a violation of a condition of probation under G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a), except as provided in G.S. 15A-1344(d2).").

However, the dissent would now have us expand the holding of *Williams* to conclude that a violation report alleging *willful* violations of Section 15A-1343(b)(3) which together amount to the defendant "willfully avoiding supervision" or "willfully making the defendant's whereabouts unknown to the supervising probation officer" also fail to qualify as "absconding" within the meaning of Section 15A-1343(b)(3a). Such an interpretation of *Williams* runs counter to the plain language of Section 15A-1343(b) and would work to eliminate absconding as a ground for probation revocation in our State.

The distinction between a violation of Section 15A-1343(b)(3) and 15A-1343(b)(3a) is primarily one of *mens rea*. A defendant does not have to act "willfully" or wrongfully "without justification or excuse" to be found in violation of the

conditions of Section 15A-1343(b)(3). N.C. Gen. Stat. § 15A-1343(b)(3); *see State v. Ramos*, 363 N.C. 352, 355, 678 S.E.2d 224, 226 (2009) (citation and quotation marks omitted) (defining "willful"). For instance, in *State v. Johnson*, a defendant asked to reschedule a probation appointment because he lacked transportation, and the probation officer declined the request. 246 N.C. App. 139, 140, 783 S.E.2d 21, 23 (2016). After the defendant failed to appear at the appointment, the officer filed a violation report for absconding and the trial court subsequently revoked the defendant's probation. *Id.* at 140, 783 S.E.2d at 23. On appeal, our Court determined that the defendant's actions "while clearly a violation of [Section] 15A-1343(b)(3), . . . do not rise to 'absconding supervision' in violation of [Section] 15A-1343(b)(3a)." *Id.* at 145, 783 S.E.2d at 25. According to this Court,

> [a]llowing actions which explicitly violate a regular or special condition of probation other than those found in [Section] 15A-1343(b)(1) or [Section] 15A-1343(b)(3a) to also serve, *without the State showing more*, as a violation of [Section] 15A-1343(b)(1) or [Section] 15A-1343(b)(3a) would result in revocation of probation without following the mechanism the General Assembly expressly provided in [Section] 15A-1344(d2).

*Id.* at 146, 783 S.E.2d at 26 (emphasis added).

However, in our case, the State did not merely allege violations of Section 15A-1343(b)(3). Where a violation report alleges that willful violations of Section 15A-1343(b)(3) together amount to the defendant "willfully avoiding supervision" or "willfully making the defendant's whereabouts unknown" in violation of Section 15A-

1343(b)(3a), and the State subsequently proffers sufficient evidence to establish those willful violations, then revocation of the defendant's probation should be left to the sound discretion of the trial court. *See* N.C. Gen. Stat. § 15A-1344(a); *State v. Mills*, ___ N.C. App. ___, ___ S.E.2d ___, ___, COA 19-597, 2020 N.C. App. LEXIS 142, **7-8 (considering violations of Section 15A-1343(b)(3) in determining a defendant absconded in violation of Section 15A-1343(b)(3a)). In this case, the State undoubtedly made that additional showing required by Section 15A-1343(b)(3a) and contemplated by this Court in *Johnson*. Therefore, this case plainly falls beyond the scope of *Williams*.

Not only would the dissent's expanded reading of *Williams* fail to align with the plain language of Sections 15A-1343(b) and 15A-1344(a), it would also operate to eliminate absconding as a ground for probation revocation. As a practical matter, those conditions laid out in Section 15A-1343(b)(3) make up the necessary elements of "avoiding supervision" or "making [one's] whereabouts unknown." A defendant cannot avoid supervision without failing to report as directed to his probation officer at reasonable times and places. Neither can a defendant make his whereabouts unknown without failing to answer reasonable inquiries or notify his probation officer of a change of address.

Accordingly, should we adopt a reading of *Williams* that prevents the State from using the language of Section 15A-1343(b)(3) to describe violations of Section

15A-1343(b)(3a), then it is unclear what exactly would continue to constitute "absconding" within the meaning of Section 15A-1343(b)(3a). As a result, violations of Section 15A-1343(b)(3a) would likely cease to be allowed as a ground for probation revocation.

Alternatively, our dissenting colleague relies upon *Melton* to argue that the State has failed to sufficiently show that Defendant acted "willfully" in violation of Section 15A-1343(b)(3a).

In *Melton*, this Court held that the State failed to present competent evidence that a defendant willfully violated Section 15A-1343(b)(3a) where "the probation officer could not testify with any specificity" and "the State's evidence only include[d] that a defendant failed to attend scheduled meetings, and the probation officer [was] unable to reach a defendant after merely two days of attempts, only leaving messages with a defendant's relatives." 258 N.C. App. 134, 140, 811 S.E.2d 678, 682-83 (2018).

Relying on *Melton*, the dissent contends that the evidence produced by the State was insufficient for the trial court to conclude that Defendant willfully violated Section 15A-1343(b)(3a) because the State failed to show that "Defendant[,] in fact[,] knew Defendant's probation officer was attempting to contact him." However, the State's evidence was more than sufficient to allow for the reasonable inference that Defendant was aware his probation officer was attempting to contact him, knew how

to contact his probation officer, and willfully failed to make himself available for supervision.

The State was not required to prove beyond a reasonable doubt that Defendant willfully violated Section 15A-1343(b)(3a). *Murchison*, 367 N.C. at 464, 758 S.E.2d at 358. In a probation revocation hearing, the State must only provide sufficient evidence "to reasonably satisfy the trial court in the exercise of its sound discretion that the defendant willfully violated a valid condition upon which probation can be revoked." *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 498 (*purgandum*). Neither was the State required to produce direct evidence of Defendant's willful intent. *Walston*, 140 N.C. App. at 332, 536 S.E.2d at 633. As previously discussed, establishing a defendant's willful intent "is seldom provable by direct evidence and must usually be shown through circumstantial evidence." *Id.* at 332, 536 S.E.2d at 633 (*purgandum*).

In the instant case, the evidence put forth by the State was much more compelling than that found in *Melton*. Defendant's probation officer received a voicemail from Defendant informing the officer that he would not be attending an appointment on May 14, 2018. That same day, the probation officer returned Defendant's call and left a voicemail informing Defendant to report two days later. From this evidence, the trial court could reasonably infer that Defendant was aware his probation officer was attempting to make contact. As discussed at length above,

the officer never again heard from Defendant, even though Defendant knew he was contacted by his probation officer and knew how to contact his probation officer.

Moreover, Defendant's probation officer was completely unaware of Defendant's whereabouts and exhausted all available avenues of contacting Defendant over the course of ten days. During the officer's absconding investigation, the officer visited Defendant's last known residence twice, called all of Defendant's references and contact numbers, called the local hospital, checked legal databases to see whether Defendant was in custody, and called the vocational program Defendant was supposed to attend. While the investigation was ongoing, Defendant also failed to report to scheduled appointments on May 16 and May 23 without contacting the officer. From this evidence, the trial court could reasonably conclude that Defendant was attempting to thwart supervision.

Accordingly, the State's evidence was more than sufficient to allow for the reasonable inference that Defendant was not only aware his probation officer was attempting to contact him over the course of ten days, but that Defendant knew how to contact his probation officer and willfully failed to make himself available for supervision. Thus, the evidence was sufficient to reasonably satisfy the trial court, in the exercise of its sound discretion, that Defendant violated Section 15A-1343(b)(3a), a condition upon which probation can be revoked. N.C. Gen. Stat. § 15A-

1344(a); *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 498. Therefore, the conclusion reached by this Court in *Melton* should not be controlling in this case.

Following the State's presentation of competent evidence establishing the absconding violation alleged by Defendant's violation report, the burden then shifted to Defendant to demonstrate his inability to comply with the terms of his probation. *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 498. At the revocation hearing, Defendant admitted to absconding and failed to put forth any evidence demonstrating that his failure to comply with the requirements of his probation was not willful.

Based on the foregoing evidence, the trial court found that Defendant "willfully and intentionally violated the terms and conditions of the probationary sentence by absconding." Having determined that the State satisfied its evidentiary burden, we conclude that the trial court's conclusion was not "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Maness*, 363 N.C. at 279, 677 S.E.2d at 808 (citation and quotation marks omitted). Therefore, the trial court did not abuse its discretion when it revoked Defendant's probation and activated his suspended sentence pursuant to Section 15A-1344(a).

II. Imposition of Consecutive Sentences

Defendant next argues the trial court abused its discretion when it declined to consolidate his active sentences following revocation of his probation. According to

Defendant, the trial court imposed consecutive sentences under the mistaken belief that it lacked the authority to modify Defendant's original suspended sentences.

Before activating a suspended sentence, the trial court may reduce the sentence or change the structure of the sentence so that it runs concurrently with other sentences. N.C. Gen. Stat. § 15A-1344(d). The trial court's decision to reduce a prison sentence or modify the structure of a sentence is reviewed for abuse of discretion. *State v. Partridge*, 110 N.C. App. 786, 788, 431 S.E.2d 550, 551-52 (1993). As previously noted, an abuse of discretion results "when a ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Maness*, 363 N.C. at 279, 677 S.E.2d at 808 (citation and quotation marks omitted).

In the present case, at the revocation hearing, Defendant requested that the activated sentences run concurrently. Defendant's probation officer requested that the sentences run consecutively. The trial judge then addressed both requests, stating in pertinent part,

> I'm not going to modify Judge Powell's [original] judgment. I mean, he entered the judgment as he saw fit. All I have in front of me is the probation violation. So[,] I'm not going to modify Judge Powell's judgment. I'm going to go [with] exactly what it was. . . . [I]t was a plea agreement, so he knew exactly what the deal was in the time. And I'm not going to second guess Judge Powell's wisdom on it.

From the record, it is clear that the trial court recognized its authority to modify the structure of Defendant's sentences and, in the court's discretion, simply chose not to consolidate the active sentences. The trial court expressly acknowledged its discretionary authority, stating, "I'm not going to modify Judge Powell's [original] judgment." Therefore, Defendant's argument that the trial court imposed consecutive sentences under the mistaken belief that it lacked the authority to modify Defendant's original suspended sentences is meritless. Rather, the record indicates that the trial court refused to modify the original judgment out of deference to the superior court judge who originally sentenced Defendant and was more familiar with the relevant facts and circumstances of Defendant's case. Such a decision is not manifestly unsupported by reason. Accordingly, we conclude the trial court did not abuse its discretion when it declined to consolidate Defendant's active sentences.

III. Clerical Errors

Lastly, Defendant argues the judgments upon revocation of probation contained clerical errors regarding the violations found. Specifically, Defendant contends that the trial court's only probation violation finding made in open court referred to the absconding violation in paragraph one of the probation officer's violation reports, while the written judgments entered referred to two additional violations in paragraphs two and three of the officer's violation reports. We agree

with Defendant that this discrepancy appears to be the result of clerical errors and remand for correction of the written judgments.

When a clerical error is discovered in the trial court's judgment on appeal, it is appropriate to remand the judgment for the limited purpose of correcting the error "because of the importance that the record speak the truth." *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 500 (citation and quotation marks omitted). Where the trial court's findings made in open court do not align with the findings made in its written judgment, our Court will remand for correction of the written judgment. *State v. Jones*, 225 N.C. App. 181, 186, 736 S.E.2d 634, 638 (2013).

Here, the trial court's only finding relating to Defendant's probation violations was that "the defendant willfully and intentionally violated the terms and conditions of the probationary sentence by absconding" as alleged in paragraph one of the probation officer's violation reports. However, in the written judgments, the trial court also found that Defendant violated the conditions of his probation by testing positive for an illegal drug (alleged in paragraph two of the violation reports) and failing to report as directed by his probation officer (alleged in paragraph three of the violation reports). Accordingly, we remand for the limited purpose of correcting the clerical errors made in the trial court's written judgments so that these judgments align with the findings made in open court on October 22, 2018.

## Conclusion

For the reasons stated herein, we affirm the trial court's judgments. However, we remand for the limited purpose of correcting the clerical errors described above.

AFFIRMED IN PART AND REMANDED IN PART.

Judge BRYANT concurs.

Chief Judge McGEE concurs in part and dissents in part by separate opinion.

McGEE, Chief Judge, concurs in part, dissents in part, with separate opinion.

Because I believe the State did not present sufficient competent evidence to support a finding of willful absconding under the General Statutes and this Court's opinions interpreting them in *State v. Williams*, 243 N.C. App. 198, 776 S.E.2d 741 (2015), and *State v. Melton*, ___ N.C. App. ___, 811 S.E.2d 678 (2018), I concur in part and respectfully dissent in part.

The General Assembly enacted the Justice Reinvestment Act ("JRA") in 2011 as "a part of a national criminal justice reform effort which, among other changes, made it more difficult to revoke offenders' probation and send them to prison." *State v. Johnson*, 246 N.C. App. 139, 143, 783 S.E.2d 21, 24 (2016) (citation and quotation marks omitted).

> The enactment of the JRA . . . brought two significant changes to North Carolina's probation system. First, . . . the JRA limited trial courts' authority to revoke probation to those circumstances in which the probationer: (1) commits a new crime in violation of N.C. Gen. Stat. § 15A-1343(b)(1); (2) absconds supervision in violation of N.C. Gen. Stat. § 15A-1343(b)(3a); or (3) violates any condition of probation after serving two prior periods of CRV [confinement in response to violations] under N.C. Gen. Stat. § 15A-1344(d2). *See* N.C. Gen. Stat. § 15A-1344(a). For all other probation violations, the JRA authorizes courts to alter the terms of probation pursuant to N.C. Gen. Stat. § 15A-1344(a) or impose a CRV in accordance with N.C. Gen. Stat. § 15A-1344(d2), but not to revoke probation. *Id.*
>
> Second, "the JRA made the following a regular condition of probation: 'Not to abscond, by willfully avoiding supervision or by willfully making the defendant's

whereabouts unknown to the supervising probation officer.'"

*State v. Williams*, 243 N.C. App. 198, 199-200, 776 S.E.2d 741, 742-43 (2015) (citations omitted).

Prior to enactment of the JRA, the General Statutes did not define the term "abscond." *Williams*, 243 N.C. App. at 205, 776 S.E.2d at 746. Instead, "the term 'abscond' ha[d] frequently been used when referring to violations of the longstanding statutory probation conditions to 'remain within the jurisdiction of the court' or to 'report as directed to the officer.'" *State v. Hunnicutt*, 226 N.C. App. 348, 355, 740 S.E.2d 906, 911 (2013) (citing *State v. Brown*, 222 N.C. App. 738, 731 S.E.2d 530 (2012); *State v. High*, 183 N.C. App. 443, 645 S.E.2d 394 (2007); *State v. Coffey*, 74 N.C. App. 137, 327 S.E.2d 606 (1985)). In a series of cases following the enactment of the JRA, this Court recognized a purpose of the JRA was to place "a heightened burden on the State to establish not only that a probation officer was unable to locate or contact a defendant placed on supervised probation, but that such inability was due to the willful efforts of the defendant." *State v. Whitmire*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 70713, at *3 (citations omitted) (unpublished); *see, e.g., Williams*, 243 N.C. App. 198, 776 S.E.2d 741.

In *Williams*, this Court reversed a trial court order revoking the defendant's probation on the grounds of willful absconding. *Williams*, 243 N.C. App. at 205, 776 S.E.2d at 746. We held that the probation violation report did not support a finding

2

of absconding where the report merely realleged conduct that violated N.C.G.S. § 15A-1343(b)(2), which requires probationers to "remain within the jurisdiction of the Court unless granted written permission to leave." The probation violation report alleged the defendant "[wa]s not reporting as instructed or providing the probation officer with a valid address at th[at] time[,] . . . [wa]s also leaving the state without probation[,] . . . [and] [d]ue to [the d]efendant knowingly avoiding the probation officer and not making his true whereabouts known [the d]efendant ha[d] absconded supervision." *Id.* at 200-01, 776 S.E.2d at 743. This Court reasoned that "[p]rior to the amendment of N.C. Gen. Stat. § 15A-1343(b) to include not 'absconding' as a condition of probation, 'abscond' ha[d] traditionally been used to refer to other conditions of probation[,]" specifically the requirements to "'remain within the jurisdiction of the court' or to 'report as directed to the officer.'" *Id.* at 205, 776 S.E.2d at 745-46 (citations omitted). We held that, as a result of the JRA amendment to make "absconding" a violation of the conditions of probation, merely re-alleging conduct that violates N.C.G.S. §§ 15A-1343(b)(2) and (3) cannot support finding a violation of N.C.G.S. § 15A-1343(b)(3a), even if the alleged violations are labelled "absconding supervision" in the report. *Id.* at 205, 776 S.E.2d at 745-46. Thus, more is required to support a finding of willful absconding under N.C.G.S. § 15A-1343(b)(3a).

In *Melton*, this Court clarified that, in determining whether the allegations support a finding of absconding, this Court is limited to considering support for the specific allegations of absconding made in the violation report. *See Melton*, ___ N.C. App. at ___, 811 S.E.2d at 681 (reviewing whether there was sufficient evidence of absconding based on dates alleged in violation reports). We held the trial court erred in its consideration of evidence from 2 November 2016, "on or about" when the violation report alleged the defendant absconded, until 9 December 2016, when the defendant was arrested, rather than from 2 November 2016 until 4 November 2016, when the reports were filed. *Id.* at ___, 811 S.E.2d at 681. The rationale for this holding was that the probation reports "provide a defendant with notice of the allegations against him, as required by N.C. Gen. Stat. § 15A-1345(e)[.]" *Id.* at ___, 811 S.E.2d at 681 (citation omitted). This Court then held the trial court abused its discretion because the State failed to show willful absconding for the relevant period between 2 November and 4 November 2016 since, although the evidence showed the officer attempted to contact the defendant, "there was no showing that a message was given to [the] defendant or, more generally, that [the] defendant knew [the officer] was attempting to contact her." *Id.* at ___, 811 S.E.2d at 682.

Notably, in addition to holding 2 November to 4 November 2016 was "the only time period [this Court] c[ould] consider under the violation report and the court's written finding," this Court in *Melton* also did not consider allegations of conduct

4

made in the same violation report for other reportable conditions of probation in determining whether the trial court's finding that the defendant absconded was supported by competent evidence. *See id.* at ___, 811 S.E.2d at 679-80 (noting that violation reports alleged violations of N.C.G.S. §§ 15A-1343(b)(3) and (9) in addition to N.C.G.S. § 15A-1343(b)(3a)).

In the present case, the majority did not note this Court's precedent in *Williams* and *Melton*, nor the purpose behind the JRA, in holding that Defendant absconded based on the probation violation report and facts before us. The record shows that the violation report that included absconding, filed on 23 May 2018, contained the following allegation for absconding (hereinafter, allegation 1):

> 1.     Regular Condition of Probation: General Statute 15A-1343(b)(3a) "Not to abscond, by willfully avoiding supervision or by willfully making the supervisee's whereabouts unknown to the supervising probation officer" in that, THE DEFENDANT HAS FAILED TO REPORT[] AS DIRECTED BY THE OFFICER, HAS FAILED TO RETURN THE OFFICER[']S PHONE CALLS, AND HAS FAILED TO PROVIDE THE OFFICER WITH A CER[T]IFIABLE ADDRESS.  THE DEFENDANT HAS FAILED TO MAKE HIMSELF AVAILABLE FOR SUPERVISION AS DIRECTED BY HIS OFFICER, THEREBY ABSCONDING SUPERVISION.   THE OFFICER[']S LAST FACE TO FACE CONTACT WITH THE OFFENDER WAS DURING A HOME CONTACT ON 4/16/18.

As an initial matter, I note that, under *Melton*, the trial court and this Court are limited by the allegations in allegation 1 of the violation report to considering

evidence for absconding in the time period between 16 April 2018 and 23 May 2018, the period between when the report alleged the absconding began and the date the violation report was filed. Moreover, although Defendant's probation officer alleged Defendant had absconded since his "last face to face contact" with the probation officer on 16 April 2018, the officer testified he only initiated the investigation for absconding after Defendant "called him on [14 May 2018] and said he got in a fight with his brother and couldn't make his appointment that day," and Defendant's probation officer called Defendant later that day and left him a message saying "let me know what you work out for housing and report two days later." Since Defendant's probation officer acknowledged Defendant affirmatively contacted him on 14 May 2018, I would hold there is no substantial evidence of absconding prior to that date.

Furthermore, although the conduct in allegation 1 of the violation report is characterized as "absconding supervision," the allegations only describe violations of N.C.G.S. § 15A-1343(b)(3). N.C.G.S. § 15A-1343(b)(3) provides the following are regular conditions of probation:

> Report as directed by the court or his probation officer to the officer at reasonable times and places and in a reasonable manner, permit the officer to visit him at reasonable times, answer all reasonable inquiries by the officer and obtain prior approval from the officer for, and notify the officer of, any change in address or employment.

N.C.G.S. § 15A-1343(b)(3). "Fail[ing] to report as directed by the officer," "fail[ing] to provide the officer with a cer[t]ifiable address," and "fail[ing] to make himself

available for supervision as directed by his officer" are only allegations of violations of N.C.G.S. § 15A-1343(b)(3)—a separate condition of probation from absconding. Here, as in *Williams*, "[a]lthough the report alleged that Defendant's actions constituted 'abscond[ing] supervision,' this wording cannot convert violations of N.C. Gen. Stat. §[] 15A-1343(b)[](3) into a violation of N.C. Gen. Stat. § 15A-1343(b)(3a)." *Williams*, 243 N.C. App. at 205, 776 S.E.2d at 745. Therefore, even though Defendant admitted to the allegations, allegations that fall within N.C.G.S. § 15A-1343(b)(3) do not support a finding of willful absconding under N.C.G.S. § 15A-1343(b)(3a).

Assuming the allegations do not only allege conduct that violates N.C.G.S. § 15A-1343(b)(3), all the alleged acts in allegation 1, taken together, still do not establish a violation of N.C.G.S. § 15A-1343(b)(3a), because they do not adequately allege willfulness by Defendant. In *Melton*, this Court held that "although there was competent evidence that [the probation officer] attempted to contact [the] defendant, there was insufficient evidence that [the] defendant willfully refused to make herself available for supervision . . ." where "there was no showing that a message was given to [the] defendant or, more generally, that [the] defendant knew [the officer] was attempting to contact her." *Melton*, ___ N.C. App. at ___, 811 S.E.2d at 682. Here, as in *Melton*, the allegations in the report, even though admitted by Defendant, as well as Defendant's probation officer's testimony that he attempted to call and to locate Defendant and also called Defendant's contacts, fail to show Defendant in fact knew

7

Defendant's probation officer was attempting to contact him.  For instance, although Defendant's probation officer testified he left a message for Defendant, there was no allegation that Defendant in fact received the message.

The majority relies on *State v. Newsome*, ___ N.C. App. ___, 828 S.E.2d 495 (2019), to support its holding that Defendant absconded on the facts before us.  In *Newsome*, the defendant received a suspended sentence after pleading guilty to a crime and was placed on probation.  *Newsome*, ___ N.C. App. at ___, 828 S.E.2d at 497.  During the defendant's probationary period, his probation officer filed multiple violation reports and his probation was modified and extended by the trial court for an additional twelve months for his failure to comply with the monetary terms of his probation.  *Id.* at ___, 828 S.E.2d at 497.  The probation officer filed a violation report for absconding when the defendant failed to make himself available after multiple attempts to contact him and he was arrested and held in custody until he posted bond. *Id.* at ___, 828 S.E.2d at 497.  Prior to his release, the defendant "had been instructed to make contact with the probation officer within 72 hours of his release from custody," *id.* at ___, 828 S.E.2d at 497, which he failed to do.  *Id.* at ___, 828 S.E.2d at 497.  The probation officer then called the defendant and, after seeing him enter his residence, went to the door and spoke with the defendant's mother, who told the probation officer he was not home.  *Id.* at ___, 828 S.E.2d at 497.  The probation officer filed an addendum to the prior violation report alleging the defendant absconded by

8

failing to report as instructed and the trial court found the defendant had absconded. *Id.* at ___, 828 S.E.2d at 497.

This Court held the trial court did not abuse its discretion by finding that the defendant had absconded because "[the d]efendant knew or should have known upon being served with the [first absconding] violation report that he was considered to be an absconder by his probation officer[.]" Furthermore, upon his subsequent release from custody, the defendant knew or should have known that the instruction to make contact with the probation officer "was more than a regular office visit," and "[i]t was a special requirement imposed upon defendant because he was considered to be an absconder[.]" *Id.* at ___, 828 S.E.2d at 499. This Court held that "[t]he requirement for [the d]efendant to contact the probation officer within 72 hours of release from custody alerted [the d]efendant that his probation officer was attempting to actively monitor him." *Id.* at ___, 828 S.E.2d at 499. In holding the defendant willfully absconded, this Court specifically noted that he "had not simply missed appointments or phone calls," but that he "knowingly failed to notify his probation officer of his release from custody" and pursued "a willful course of conduct . . . that thwarted supervision." *Id.* at ___, 828 S.E.2d at 500.

The majority's reliance on *Newsome* is misplaced. First, in *Newsome*, the defendant was placed on notice that making contact with his probation officer was "a special requirement imposed upon [him] because he was considered to be an

9

absconder," whereas in this case Defendant had no such notice that he was considered an absconder and subject to a special requirement to contact his probation officer; rather, the appointments Defendant missed were "regular office visit[s]." *Id.* at ___, 828 S.E.2d at 499. Unlike the defendant in *Newsome*, who was specifically instructed, there is no evidence Defendant here in fact heard the voicemail message from his probation officer telling him to report in two days. Second, the defendant in *Newsome* "had not simply missed appointments or phone calls," but had actively avoided the officer by failing to notify him after his release from custody and hiding in his residence while his mother asserted he was not there; here, the only specific acts by Defendant that were alleged by the probation officer in the violation report were missing appointments and failing to return phone calls. *See id.* at ___, 828 S.E.2d at 497, 500. Finally, the defendant in *Newsome* "ma[de] himself unavailable for supervision . . . for almost one month[,]" while Defendant in this case contacted his probation officer on 14 May 2018, only nine days prior to the filing of the violation report. *Id.* at ___, 828 S.E.2d at 499-500. For these reasons, the present case is distinguishable from *Newsome*.

A primary purpose of the General Assembly in enacting the JRA was to "ma[k]e it more difficult to revoke offenders' probation and send them to prison." *Johnson*, 246 N.C. App. at 143, 783 S.E.2d at 24 (citation and quotation marks omitted). Consistent with the General Assembly's purpose, I would hold that merely

failing to contact a probation officer during this brief nine-day period, without more, does not show sufficient evidence of willfulness to support a finding of willful absconding under N.C.G.S. § 15A-1343(b)(3a).

Because the State has not shown Defendant "willfully refused to make [him]self available for supervision" during "the only time period we can consider" (between 14 May 2018, when Defendant last contacted his probation officer, and 23 May 2018, when the violation report for absconding was filed), and because the conduct admitted by Defendant only amounts to violations of N.C.G.S. § 15A-1343(b)(3), I would hold the State's evidence was insufficient to support a finding of absconding under N.C.G.S. § 15A-1343(b)(3a) and the trial court abused its discretion by revoking Defendant's probation on that ground. *Melton*, ___ N.C. App. at ___, 811 S.E.2d at 682; *Williams*, 243 N.C. App. at 205, 776 S.E.2d at 745. I would reverse the judgment of the trial court. Therefore, I dissent from the majority on this issue. I concur with the majority's holdings that the trial court did not abuse its discretion when it declined to consolidate Defendant's active sentences and that there were clerical errors in the written judgment.