MURPHY, Judge.
 

 *626
 
 Erica Deanna Bradsher ("Defendant") appeals from her convictions for misdemeanor larceny and injury to personal property. On appeal, Defendant first contends that she is entitled to a new trial due to the State's inability to provide her with a transcript of the proceedings in her case, depriving her of her constitutional rights to effective appellate review, effective assistance of counsel, equal protection under the law, and due process of law. Next, Defendant argues, and the State concedes, that the trial court erred in denying her motion to dismiss the larceny charge when she was in lawful possession of the property at the time she carried it away. Finally, Defendant claims that the trial court erred in denying her motion to dismiss when the State failed to meet its burden of sufficiently
 
 *193
 
 establishing the elements of injury to personal property causing damage more than $200. We agree that both charges should have been dismissed, and vacate Defendant's convictions.
 

 Background
 

 On 3 September 2014, Erica Bradsher ("Defendant") was found guilty of misdemeanor larceny and injury to personal property causing damage more than $200. She had been renting a home ("old house"), and eventually had difficulty paying her rent. She found a new home
 
 *627
 
 ("new house") to live in; however, this home did not yet have appliances installed. Defendant was evicted and ordered to vacate the premises by 2 February 2015. She decided to move some appliances from the old house to the new house until the new appliances arrived. She had planned on returning the appliances before the eviction date; however, she was arrested for felony larceny and injury to personal property before she was able to do so. Defendant was convicted by a jury of non-felonious larceny and injury to personal property causing damage more than $200, and gave oral notice of appeal.
 

 On 23 September 2014, Defendant was appointed Kathy LaMotte as her appellate counsel. Trial counsel mailed notes to the Appellate Defender's Office on 21 October 2014 in response to a request from the Office of the Appellate Defender. Appellate counsel then attempted to contact the court reporter, Wendy Ricard, to obtain the transcript. Between 14 November 2014 and 11 August 2016, Superior Court Judge (now Supreme Court Justice) Morgan granted over twenty orders extending time to prepare and deliver the transcript. During this time, appellate counsel continued attempting to obtain the transcript from Ms. Ricard, who eventually moved to New York and became unresponsive. Appellate counsel sought advice from the Office of Appellate Defender and involved Court Reporting Manager David Jester to no avail. On 12 November 2015, appellate counsel requested the prosecutor's notes, and repeated this request on 11 February 2016. Appellate counsel also requested notes from Judge (now Justice) Morgan on 18 February 2016, who was unable to produce any given the passage of time. The prosecutor finally agreed to send trial notes to appellate counsel on 17 October 2016. Due to the dereliction of duty by Ms. Ricard, there is no transcript available; however, due to the diligence of appellate counsel, a summary is set out in narrative form along with the trial exhibits. The available narration, as stipulated to by all parties, is presented as follows:
 

 Summary
 

 : The case involves charges of Felony Larceny and Injury to Personal Property, based on [Defendant's] undisputed removal of appliances from a rental property she leased ("old house"), but from which she was being evicted. The electricity had been shut off at the old house and she had groceries and an infant. [Defendant] had arranged for a new house ("new house"), which had functioning electricity, but the new house's kitchen appliances had not yet been delivered. Once the new appliances were delivered, she made arrangements to return the old appliances to the old house. Before she could return the
 
 *628
 
 appliances, she was arrested. The arrest occurred on 29 January 2013, after the eviction hearing on 23 January 2013 and before 02 February 2013, ten days later, the date on which she was required to vacate the premises.
 

 Officer Kyle Tippins
 
 testified as follows: A Ms. Paylor had seen a refrigerator being loaded about a week prior to 29 January. He found [Defendant] at the new house. All the appliances were located in [Defendant's] new house. She said that she was "about done moving" and asked, "Is this about the fridge?" The power at the old house was off. He was unable to determine whether [Defendant] had fully moved out. [Defendant] stated to him that she felt she still had time left on her eviction, and had the right to use them until the eviction date. [Defendant] stated to him that she had $300 worth of groceries and didn't want them to spoil. [Defendant] stated to him that she was temporarily using them and planned to return them. He noticed no damage to the stove. He noticed a white dishwasher and refrigerator being used. [Defendant] told him that she needed the stove and microwave to heat the baby's
 
 *194
 
 bottle. He did not recall [Defendant] saying anything about the power being cut off, and there was nothing in his report about her stating that. The property was released to the landlord that night.
 

 Patrice Wade (Landlord)
 
 testified as follows: The house was a starter home. [Defendant] had a baby and stopped working. Ms. Wade worked with her when she stopped paying, would pay half, then pay the other. In December, she contacted [Defendant] but "she would not leave." In January 2013, she began eviction proceedings. The eviction process allowed [Defendant] ten days to vacate the premises. The papers were served on 14 January 2013. On 29 January, she saw a neighbor, Terri Paylor, at a ball game. Ms. Paylor told her that a black refrigerator had been removed about a week earlier. She went to the old house, found the appliances missing and contacted the police. There was no power in the home. She assumed [Defendant] would be there because she still had time left. She described a dent near the top on the side of the refrigerator, and a problem with a hinge on the door, causing a lack of support for the door. She admitted that the damage
 
 *629
 
 could have been caused during moving the refrigerator. She described some scratches on top of the stove, and admitted that the damage could have been caused during the moving of the stove. She filed an insurance claim because of other things also. The homeowner's insurance policy covered the items. She threw out the appliances. The refrigerator was new when they bought it in 2007. [Defendant] replaced the carpet and cloroxed the floor before she left. The electric bill was in [Defendant's] name. The appliances [Defendant] removed were black and the new (replacement) appliances were white.
 

 Judge Morgan denied [Defendant's] motion to dismiss both charges for insufficiency.
 

 Erica Bradsher (Appellant-Defendant)
 
 testified as follows: She entered into the lease in November 2011. It was a good relationship at first. Ms. Wade worked with her until July 2013, when [Defendant] had a baby. [The notes are unclear: She and/or the baby were hospitalized for two months.] She began to have trouble paying the rent. On 22 January 2013, the power was disconnected at her old house. At that point, she had a six-month-old baby and a 12-year-old son, plus two other children for whom she shared joint custody. She had a freezer full of breast milk. She had just gotten food stamps and had just purchased groceries. She called her new landlord and received permission to move in early, but was told that the new appliances had not yet been delivered. She did not own appliances, and could not afford to purchase a small refrigerator. She had friends move the old appliances from the old house to the new house on 22 January 2013. It was necessary to remove the refrigerator door to get it into the house. The new appliances were delivered to the new house on 24 January 2013. She sent an email to her father the same day, asking for his help returning the appliances by 02 February. He agreed to help her on 01 February. [This email was read into evidence, and is in the clerk's file.] When the new appliances arrived at the new house, she moved the old refrigerator to the back deck to make room in the kitchen. When the police arrived on 29 January 2013, she let the officer in and cooperated with him. She told the officer that the lights and heat had
 
 *630
 
 been cut off at the old house, and that she needed the stove to cook and the microwave to heat up bottles. She told the officer that she was just using the appliances temporarily and intended to return them. She was still using the old stove on the day the officer came. The new stove was in a closet, not yet installed. She wanted to get the appliances back to the old house as quickly as she could. The eviction order gave her until 02 February 2013 to vacate, and she needed to get the appliances back by then. She finished moving on 30 January and 01 February. She thought that "they would never know because I would return it before." She knew the appliances were not hers but believed she had a right to use them until 02 February 2013.
 

 In arguing his motion to dismiss, Trial Counsel offered three cases:
 
 State v. Brackett
 
 ,
 
 306 N.C. 138
 
 ,
 
 291 S.E.2d 660
 
 ;
 

 *195
 

 State v. Arnold
 
 ,
 
 264 N.C. 348
 
 ,
 
 141 S.E.2d 473
 
 ; and
 
 State v. Sims
 
 ,
 
 247 N.C. 751
 
 ,
 
 102 S.E.2d 143
 
 .
 

 Judge Morgan denied [Defendant's] renewed motion to dismiss both charges.
 

 Nothing further is known regarding instructions or other motions.
 

 The jury found [Defendant] guilty of Misdemeanor Larceny and Injury to Personal Property. Judge Morgan sentenced [Defendant] to 120 days on each conviction, with sentences suspended in favor of 36 months supervised probation.
 

 The following exhibits are also present in the record: The exhibit showing date of tenancy from 16 November 2012 to 16 November 2013, the exhibit showing date of service of Magistrate Summons as 10 January 2013, the exhibit showing date of Magistrate's Order as 23 January 2013 along with the vacate date of 2 February 2013.
 

 Defendant appeals the trial court's denials of her motions to dismiss.
 

 Analysis
 

 Defendant argues that she is entitled to a new trial due to the lack of transcript of the proceedings in the case. She claims that the failure to provide appellate counsel with a transcript violated her right to effective appellate review, effective assistance of counsel, due process of law, and equal protection of the law. We disagree.
 

 *631
 
 "The unavailability of a verbatim transcript does not automatically constitute error."
 
 State v. Quick
 
 ,
 
 179 N.C. App. 647
 
 , 651,
 
 634 S.E.2d 915
 
 , 918 (2006). Instead, in order to show error, "a party must demonstrate that the missing recorded evidence resulted in prejudice. General allegations of prejudice are insufficient to show reversible error."
 
 Id.
 
 at 651,
 
 634 S.E.2d at 918
 
 . Our Supreme Court has stated, "the absence of a complete transcript does not prejudice the defendant where alternatives are available that would fulfill the same functions as a transcript and provide the defendant with a meaningful appeal."
 
 State v. Lawrence
 
 , 352, N.C. 1, 16,
 
 530 S.E.2d 807
 
 , 817 (2000).
 

 In the absence of a verbatim transcript, the parties have the alternative option of creating a narration to reconstruct the testimonial evidence and other proceedings of the trial. N.C. R. App. P. 9(c)(1) (2015);
 
 see also
 

 Quick
 
 ,
 
 179 N.C. App. at 651
 
 ,
 
 634 S.E.2d at 918
 
 ("[A] party has the means to compile a narration of the evidence through a reconstruction of the testimony given."). Either party may object to issues with the narration, and any disputes are to be settled by the trial court.
 
 Id.
 
 at 651,
 
 634 S.E.2d at 918
 
 . Overall, the narration and record must have the evidence "necessary for an understanding of all issues presented on appeal." N.C. R. App. P. 9(a)(1)(e).
 

 In the present case, both parties stipulated to the narrative which contains sufficient evidence to understand all issues presented on appeal. Defendant, however, claims to be prejudiced in that "it is impossible to know whether [defendant's] issues were preserved for appeal." This amounts to nothing more than a general allegation of prejudice as there is no concern or dispute over the issues preserved for appeal. There are three main issues raised on appeal by Defendant, one of which being the lack of transcript. There is no debate as to whether the other two issues were preserved for trial. While we acknowledge the difficult circumstance that appellate counsel was put in due to Ms. Ricard's dereliction, we do not find any prejudice. We find that both parties stipulated to the narrative present in the record, and that it paints a sufficient picture for us to provide adequate review of these issues.
 

 In regards to the merits, Defendant assigns error to the trial court for denying her motion to dismiss the charges of misdemeanor larceny and injury to personal property. As the State concedes, and we agree, the trial court erred in denying Defendant's motion to dismiss the charge of larceny as she was in lawful possession of the property at the time she removed it from the real property.
 
 See
 

 State v. Bailey
 
 ,
 
 25 N.C. App. 412
 
 , 416,
 
 213 S.E.2d 400
 
 , 402 (1975) (holding there was no taking by trespass where defendant removed furniture from the trailer he was renting
 
 *632
 
 because he was in lawful possession by virtue of his tenancy, and did not have an intent to convert the furniture to his own uses). Defendant also argues that the
 
 *196
 
 State failed to meet its burden of sufficiently establishing the elements of injury to personal property causing damage more than $200. We agree.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). When ruling on a defendant's motion to dismiss, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [d]efendant's being the perpetrator of such offense."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Cummings
 
 ,
 
 46 N.C. App. 680
 
 , 683,
 
 265 S.E.2d 923
 
 , 925 (1980).
 

 When reviewing the sufficiency of evidence, "we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences."
 
 Fritsch
 
 ,
 
 351 N.C. at 378-79
 
 ,
 
 526 S.E.2d at 455
 
 . "The [C]ourt is to consider all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State."
 
 State v. Earnhardt
 
 ,
 
 307 N.C. 62
 
 , 67,
 
 296 S.E.2d 649
 
 , 653 (1982) (citation omitted). However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed."
 
 Id.
 
 at 66,
 
 296 S.E.2d at 652
 
 (citation omitted).
 

 Defendant was charged with injury to personal property causing damage more than $200 in violation of N.C.G.S. § 14-160(b) (2015). The State must prove the following four elements for the crime of injury to personal property: "(1) personal property was injured; (2) the personal property was that 'of another'; (3) the injury was inflicted 'wantonly and willfully'; and (4) the injury was inflicted by the person or persons accused."
 
 State v. Ellis
 
 ,
 
 368 N.C. 342
 
 , 344,
 
 776 S.E.2d 675
 
 , 677 (2015). The State must also show that the injury exceeded $200 to escalate the crime from a Class 2 misdemeanor to a Class 1 misdemeanor.
 
 State v. Hardy
 
 ,
 
 242 N.C. App. 146
 
 , 155,
 
 774 S.E.2d 410
 
 , 416-17 (2015). In the present case, it is undisputed that the property was injured, and while Defendant was in lawful possession of the property at the time, the property was in fact owned by Mrs. Wade. Therefore, our relevant inquiries are (1) whether the State proved that the injury was inflicted "wantonly and willfully," (2) whether Defendant is indeed the person who inflicted the injury, and (3) whether the State proved the injury was in excess of $200.
 

 *633
 
 I. Wantonly and Willfully
 

 When used in criminal statutes, "willful" has been defined as "the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of the law."
 
 State v. Brackett
 
 ,
 
 306 N.C. 138
 
 , 142,
 
 291 S.E.2d 660
 
 , 662 (1982) (citation omitted). "Conduct is wanton when [it is] in conscious and intentional disregard of and indifference to the rights and safety of others."
 
 Id.
 
 at 142,
 
 291 S.E.2d at 662
 
 (citation omitted). These two words are meant to refer to elements of a single crime, and generally connote intentional wrongdoing.
 
 State v. Casey
 
 ,
 
 60 N.C. App. 414
 
 , 416,
 
 299 S.E.2d 235
 
 , 237 (1983) (citing
 
 State v. Williams
 
 ,
 
 284 N.C. 67
 
 , 72-73,
 
 199 S.E.2d 409
 
 , 412 (1973) ). "When intent is an essential element of a crime the State is required to prove the act was done with the requisite specific intent, and it is not enough to show that the [d]efendant merely intended to do that act."
 
 Brackett
 
 ,
 
 306 N.C. at 141
 
 ,
 
 291 S.E.2d at 662
 
 .
 

 In the present case, the State failed to present sufficient evidence to show Defendant intended to cause injury to the personal property. The only evidence found in the record comes from the narration of Mrs. Wade, in which she acknowledges the damage could have occurred during moving. Despite no indication Mrs. Wade was present during any of the moving, there still was not enough to find that Defendant willfully and wantonly injured the property. In its brief, the State attempts to show intent by claiming that since Defendant removed the door to get the refrigerator into the new residence, "[i]t
 
 *197
 
 can reasonably be inferred that [Defendant] also had to remove the door of the refrigerator again when she placed it onto her back porch," and as a result, caused a problem with the door hinge. Even assuming,
 
 arguendo
 
 , that this is a reasonable inference from the evidence, it still in no way shows intent to damage, only intent to remove the door. At most, this would illustrate negligence in an attempt to protect the personal property by removing the door in order to fit the refrigerator into the house, rather than risking any scratches or dents by keeping it attached. Further, there is no evidence in the record as to how the stove was dented.
 

 II. The Injury Was Inflicted by the Person Accused
 

 The next element of the injury to personal property at issue here requires the State to prove beyond a reasonable doubt that Defendant was indeed the one who caused the damage to the appliances. The State has failed to provide sufficient evidence of this element. Again, the only evidence the State has presented is the narration of Mrs. Wade claiming that the damage could have occurred during moving. It is unclear
 
 *634
 
 whether this is meant to apply to the moving from the old to the new house, from one area of the new house to another, or from the new house back to the old house. Officer Tippins testified that he "noticed no damage to the stove" when he arrived at the new house on 29 January 2013. This would tend to imply that the damage occurred when the appliances were being returned to the old house. However, nothing in the record infers that Defendant inflicted this damage.
 

 Regardless of when the damage occurred, the State failed to put forth any evidence that Defendant is indeed the one who caused the injury. The record indicates that Defendant was assisted by friends in moving the appliances from the old to the new house, and that she asked her father to assist in moving them back to the old house. Even considered in the light most favorable to the State, there is no evidence that indicates Defendant, not one of her friends, her father, or anyone else who may have helped in moving the appliances, was the individual who caused the damage. The State has failed to meet its burden.
 

 As there was not sufficient evidence as to the elements of the crime, we need not address the valuation of the damage or the proper classification of the misdemeanor.
 

 Conclusion
 

 The State concedes that Defendant should not have been found guilty of larceny, and has failed to present substantial evidence for two of the four elements of injury to personal property. Therefore, we hold that the trial court erred in denying Defendant's motions to dismiss both charges.
 

 VACATED
 

 Judges Hunter, Jr. and Davis concur.