IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-504

 Filed: 17 March 2020

Buncombe County, Nos. 14CRS87781-83, 16CRS84995, 16CRS84997, 17CRS81903-
04

STATE OF NORTH CAROLINA

 v.

JUSTIN BLAKE CROMPTON, Defendant.

 Appeal by defendant from judgments entered 25 October 2018 by Judge

Marvin P. Pope, Jr. in Buncombe County Superior Court. Heard in the Court of

Appeals 12 November 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Brenda
 Eaddy, for the State.

 Office of the Appellate Defender, by Appellate Defender Glenn Gerding and
 Assistant Appellate Defender Sterling P. Rozear, for defendant-appellant.

 BERGER, Judge.

 On October 25, 2018, Justin Blake Crompton (“Defendant”) had his probation

revoked and his suspended sentences activated after the trial court found that

Defendant had absconded from supervision pursuant to N.C. Gen. Stat. § 15A-

1343(b)(3a). As a result of his suspended sentences being activated, Defendant was

ordered to serve a total of 36 to 102 months in prison for nine separate offenses. On

appeal, Defendant argues (1) the trial court abused its discretion when it revoked

Defendant’s probation and activated his suspended sentences; (2) the trial court
 STATE V. CROMPTON

 Opinion of the Court

abused its discretion when it declined to consolidate Defendant’s active sentences

upon revocation of probation; and (3) the judgments which revoked probation

contained clerical errors regarding the violations found. We conclude that the trial

court did not abuse its discretion when it revoked Defendant’s probation or required

Defendant to serve consecutive sentences. However, we remand for the limited

purpose of correcting clerical errors in the written judgments.

 Factual and Procedural Background

 On April 24, 2017, Defendant pleaded guilty to nine separate charges involving

breaking and entering, felony larceny, obtaining property by false pretense, carrying

a concealed weapon, and possession of a firearm with an altered serial number. The

trial court imposed six judgments with separate sentences totaling 36 to 102 months

in prison. The trial court suspended Defendant’s sentences and placed him on

probation for 36 months.

 On June 28, 2017, Defendant’s probation officer filed violation reports which

alleged several revocation-ineligible parole violations. On September 7, 2017, the

trial court found that Defendant violated his probation and entered orders which

modified the monetary conditions of Defendant’s probation and required Defendant

to serve ninety days in prison followed by ninety days of house arrest.

 On May 23, 2018, additional violation reports were filed which alleged

Defendant “willfully violated,” among other things:

 -2-
 STATE V. CROMPTON

 Opinion of the Court

 1. Regular Condition of Probation: General Statute 15A-
 1343(b)(3a) “Not to abscond, by willfully avoiding
 supervision or by willfully making the supervisee’s
 whereabouts unknown to the supervising probation officer”
 in that, THE DEFENDANT HAS FAILED TO REPORT[]
 AS DIRECTED BY THE OFFICER, HAS FAILED TO
 RETURN THE OFFICER[’]S PHONE CALLS, AND HAS
 FAILED TO PROVIDE THE OFFICER WITH A
 CERTIFIABLE ADDRESS. THE DEFENDANT HAS
 FAILED TO MAKE HIMSELF AVAILABLE FOR
 SUPERVISION AS DIRECTED BY HIS OFFICER,
 THEREBY ABSCONDING SUPERVISION. THE
 OFFICER[’]S LAST FACE TO FACE CONTACT WITH
 THE OFFENDER WAS DURING A HOME CONTACT ON
 4/16/19.

 The matter came on for hearing on October 22, 2018. At the hearing,

Defendant waived a formal reading of the violation reports and admitted the

violations. Defendant’s probation officer testified that Defendant had failed to report

as directed by the officer, failed to return the officer’s phone calls, and failed to provide

the officer with a verifiable address.

 The officer further testified that on May 14, 2018, he received a voicemail from

Defendant informing the officer that he would not be attending an appointment that

day. The probation officer returned Defendant’s call and left a voicemail informing

Defendant to report two days later. Defendant’s probation officer subsequently

initiated an absconding investigation. During this investigation, the officer went to

Defendant’s last known residence twice, called all of Defendant’s references and

contact numbers, called the local hospital, checked legal databases to see whether

 -3-
 STATE V. CROMPTON

 Opinion of the Court

Defendant was in custody, and called the vocational program Defendant was

supposed to attend. According to the probation officer, Defendant also failed to report

for scheduled appointments on May 16 and May 23 without contacting the probation

officer.

 After exhausting all available avenues of contacting Defendant, the probation

officer entered an absconding violation on May 23, 2018. At the violation hearing,

the officer recommended revocation of Defendant’s probation and requested that the

sentences not be consolidated.

 At the close of the hearing, the trial court found that Defendant had “willfully

and intentionally violated the terms and conditions of the probationary sentence by

absconding.” The court revoked Defendant’s probation and activated Defendant’s

suspended sentences as originally entered on April 24, 2017. The trial court entered

written judgments against Defendant on October 25, 2018. Defendant timely

appeals.

 Analysis

 On appeal, Defendant argues (1) the trial court abused its discretion when it

revoked Defendant’s probation and activated his suspended sentences; (2) the trial

court abused its discretion when it declined to consolidate Defendant’s active

sentences upon revocation of probation; and (3) the judgments which revoked

Defendant’s probation contain clerical errors. We conclude that the trial court did

 -4-
 STATE V. CROMPTON

 Opinion of the Court

not abuse its discretion when it revoked Defendant’s probation or when it declined to

consolidate his active sentences. However, we remand for the limited purpose of

correcting clerical errors in the written judgments.

 I. Revocation of Probation and Activation of Suspended Sentences

 This Court reviews the trial court’s decision to revoke a defendant’s probation

for abuse of discretion. State v. Murchison, 367 N.C. 461, 464, 758 S.E.2d 356, 358

(2014). The State must produce sufficient evidence “to reasonably satisfy the trial

court in the exercise of its sound discretion that the defendant willfully violated a

valid condition upon which probation can be revoked.” State v. Newsome, ___ N.C.

App. ___, ___, 828 S.E.2d 495, 498 (2019) (purgandum). An abuse of discretion occurs

“when a ruling is manifestly unsupported by reason or is so arbitrary that it could

not have been the result of a reasoned decision.” State v. Maness, 363 N.C. 261, 279,

677 S.E.2d 796, 808 (2009) (citation and quotation marks omitted).

 “Probation or suspension of sentence comes as an act of grace to one convicted

of, or pleading guilty to, a crime.” Murchison, 367 N.C. at 463, 758 S.E.2d at 358

(citation and quotation marks omitted). “A probation revocation proceeding is not a

formal criminal prosecution,” and an “alleged violation of a valid condition of

probation need not be proven beyond a reasonable doubt.” Id. at 464, 758 S.E.2d at

358 (citations and quotation marks omitted).

 -5-
 STATE V. CROMPTON

 Opinion of the Court

 N.C. Gen. Stat. § 15A-1343(b) provides the regular conditions of probation that

apply to all defendants absent a specific exemption by the presiding judge. Relevant

here, a probationer must:

 (3) Report as directed by the court or his probation
 officer to the officer at reasonable times and places and in
 a reasonable manner, permit the officer to visit him at
 reasonable times, answer all reasonable inquiries by the
 officer and obtain prior approval from the officer for, and
 notify the officer of, any change in address or employment.

 (3a) Not abscond by willfully avoiding supervision or by
 willfully making the defendant's whereabouts unknown to
 the supervising probation officer, if the defendant is placed
 on supervised probation.

N.C. Gen. Stat. § 15A-1343(b)(3), (3a) (2019).

 A violation of Section 15A-1343(b)(3), without more, would not merit revocation

of a defendant’s probation unless the requirements of Section 15A-1344(d2) have also

been met. State v. Williams, 243 N.C. App. 198, 204, 776 S.E.2d 741, 745 (2015).

Pursuant to Section 15A-1344(d2), a defendant’s parole may be revoked following a

violation of Section 15A-1343(b)(3) where the defendant has already served two

periods of confinement stemming from other parole violations. N.C. Gen. Stat. § 15A-

1344(d2) (2019). However, where the trial court finds that a defendant has absconded

in violation of Section 15A-1343(b)(3a), then the trial court may revoke probation and

activate a defendant’s suspended sentence based solely upon this finding. N.C. Gen.

Stat. § 15A-1344(a); Newsome, ___ N.C. App. at ___, 828 S.E.2d at 498.

 -6-
 STATE V. CROMPTON

 Opinion of the Court

 Under the plain language of Section 15A-1343(b)(3a), a defendant “absconds”

by either (1) “willfully avoiding supervision” or (2) “willfully making the defendant’s

whereabouts unknown to the supervising probation officer.” N.C. Gen. Stat. § 15A-

1343(b)(3a). Although Section 15A-1343 does not define “willfully,” the term is well-

defined by our case law. “When used in criminal statutes, ‘willful’ has been defined

as ‘the wrongful doing of an act without justification or excuse, or the commission of

an act purposely and deliberately in violation of the law.’ ” State v. Bradsher, 255

N.C. App. 625, 633, 805 S.E.2d 191, 196 (2017) (quoting State v. Brackett, 306 N.C.

138, 142, 291 S.E.2d 660, 662 (1982)). Additionally, we note that establishing a

defendant’s willful intent “is seldom provable by direct evidence and must usually be

shown through circumstantial evidence.” State v. Walston, 140 N.C. App. 327, 332,

536 S.E.2d 630, 633 (2000) (purgandum). In determining the presence or absence of

the element of intent, the fact finder may consider the acts and conduct of the

defendant and general circumstances existing at the time of the charged probation

violation. See id. at 332, 536 S.E2d at 634.

 Where a probation violation report specifically alleges that a defendant has

absconded and the State brings forth competent evidence establishing the violation,

then the State has met the burden required of Section 15A-1344(a) to warrant

revocation of a defendant’s probation. Newsome, ___ N.C. App. at ___, 828 S.E.2d at

499-500. Once the State has met its burden, the task falls upon the defendant to

 -7-
 STATE V. CROMPTON

 Opinion of the Court

demonstrate his inability to comply with the terms of his probation. State v. Talbert,

221 N.C. App. 650, 652, 727 S.E.2d 908, 910-11 (2012). Phrased differently, the task

falls upon the defendant to demonstrate that his noncompliance was not “willful.”

 In this case, the probation officer’s violation report specifically alleged, and the

State presented competent evidence to support the trial court’s finding, that

Defendant violated the conditions of his probation by absconding. At the revocation

hearing, the officer testified that Defendant had failed to report as directed by the

officer, failed to return the officer’s phone calls, and failed to provide the officer with

a verifiable address. Based on these violations of Section 15A-1343(b)(3), the officer

initiated an absconding investigation to determine whether Defendant was also in

violation of Section 15A-1343(b)(3a).

 Pursuant to this investigation, Defendant’s probation officer exhausted all

available avenues of contacting Defendant. At trial, Defendant’s probation officer

testified that he went to Defendant’s last known residence twice, called all of

Defendant’s references and contact numbers, called the local hospital, checked legal

databases to see whether Defendant was in custody, and called the vocational

program Defendant was supposed to attend. While the investigation was ongoing,

Defendant also failed to report to scheduled appointments on May 16 and May 23

without contacting the officer. Defendant never made contact with his probation

officer, and the officer was completely unaware of Defendant’s whereabouts from at

 -8-
 STATE V. CROMPTON

 Opinion of the Court

least May 14, 2018 to May 23, 2018. Based upon Defendant’s actions, on May 23,

2018, the probation officer entered an absconding violation.

 Importantly, as discussed above, the State does not bear the burden of proving

that Defendant absconded beyond a reasonable doubt. Murchison, 367 N.C. at 464,

758 S.E.2d at 358. Rather, the State is merely required to produce sufficient evidence

to satisfy the trial court in the exercise of its sound discretion. Newsome, ___ N.C.

App. at ___, 828 S.E.2d at 498. Cognizant of this burden, we conclude the State

presented sufficient competent evidence by which the trial court could find that

Defendant absconded by willfully avoiding supervision or willfully making his

whereabouts unknown to his probation officer in violation of Section 15A-1343(b)(3a).

 Relying on State v. Williams, 243 N.C. App. 198, 776 S.E.2d 741 (2015), and

State v. Melton, 258 N.C. App. 134, 811 S.E.2d 678 (2018), our dissenting colleague

contends that the State has failed to present sufficient evidence to support a finding

that Defendant absconded in violation of Section 15A-1343(b)(3a). The dissent’s

reliance on these cases is misplaced.

 In Williams, our Court concluded that the State failed to carry its burden of

showing a defendant had absconded from supervision where the violation report

entered against the defendant failed to specifically allege a violation of Section 15A-

1343(b)(3a) and the defendant’s probation officer made telephone contact with the

defendant on several occasions. 243 N.C. App. at 205, 776 S.E.2d at 746. In fact, in

 -9-
 STATE V. CROMPTON

 Opinion of the Court

that case, the State did not even argue that the defendant had absconded from

supervision. Id. at 200, 776 S.E.2d at 743. Accordingly, Williams stands for the

proposition that a defendant’s probation violations, other than violations listed in

Section 15A-1344(a), cannot serve as the basis for revocation of the defendant’s

probation unless the requirements of Section 15A-1344(d2) are also met. This

conclusion is plainly consistent with the language of Section 15A-1344(a). N.C. Gen.

Stat. § 15A-1344(a) (“The court may only revoke probation for a violation of a

condition of probation under G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a), except as

provided in G.S. 15A-1344(d2).”).

 However, the dissent would now have us expand the holding of Williams to

conclude that a violation report alleging willful violations of Section 15A-1343(b)(3)

which together amount to the defendant “willfully avoiding supervision” or “willfully

making the defendant's whereabouts unknown to the supervising probation officer”

also fail to qualify as “absconding” within the meaning of Section 15A-1343(b)(3a).

Such an interpretation of Williams runs counter to the plain language of Section 15A-

1343(b) and would work to eliminate absconding as a ground for probation revocation

in our State.

 The distinction between a violation of Section 15A-1343(b)(3) and 15A-

1343(b)(3a) is primarily one of mens rea. A defendant does not have to act “willfully”

or wrongfully “without justification or excuse” to be found in violation of the

 - 10 -
 STATE V. CROMPTON

 Opinion of the Court

conditions of Section 15A-1343(b)(3). N.C. Gen. Stat. § 15A-1343(b)(3); see State v.

Ramos, 363 N.C. 352, 355, 678 S.E.2d 224, 226 (2009) (citation and quotation marks

omitted) (defining “willful”). For instance, in State v. Johnson, a defendant asked to

reschedule a probation appointment because he lacked transportation, and the

probation officer declined the request. 246 N.C. App. 139, 140, 783 S.E.2d 21, 23

(2016). After the defendant failed to appear at the appointment, the officer filed a

violation report for absconding and the trial court subsequently revoked the

defendant’s probation. Id. at 140, 783 S.E.2d at 23. On appeal, our Court determined

that the defendant’s actions “while clearly a violation of [Section] 15A-1343(b)(3),

. . . do not rise to ‘absconding supervision’ in violation of [Section] 15A-1343(b)(3a).”

Id. at 145, 783 S.E.2d at 25. According to this Court,

 [a]llowing actions which explicitly violate a regular or
 special condition of probation other than those found in
 [Section] 15A-1343(b)(1) or [Section] 15A-1343(b)(3a) to
 also serve, without the State showing more, as a violation
 of [Section] 15A-1343(b)(1) or [Section] 15A-1343(b)(3a)
 would result in revocation of probation without following
 the mechanism the General Assembly expressly provided
 in [Section] 15A-1344(d2).

Id. at 146, 783 S.E.2d at 26 (emphasis added).

 However, in our case, the State did not merely allege violations of Section 15A-

1343(b)(3). Where a violation report alleges that willful violations of Section 15A-

1343(b)(3) together amount to the defendant “willfully avoiding supervision” or

“willfully making the defendant’s whereabouts unknown” in violation of Section 15A-

 - 11 -
 STATE V. CROMPTON

 Opinion of the Court

1343(b)(3a), and the State subsequently proffers sufficient evidence to establish those

willful violations, then revocation of the defendant’s probation should be left to the

sound discretion of the trial court. See N.C. Gen. Stat. § 15A-1344(a); State v. Mills,

___ N.C. App. ___, ___ S.E.2d ___, ___, COA 19-597, 2020 N.C. App. LEXIS 142, **7-

8 (considering violations of Section 15A-1343(b)(3) in determining a defendant

absconded in violation of Section 15A-1343(b)(3a)). In this case, the State

undoubtedly made that additional showing required by Section 15A-1343(b)(3a) and

contemplated by this Court in Johnson. Therefore, this case plainly falls beyond the

scope of Williams.

 Not only would the dissent’s expanded reading of Williams fail to align with

the plain language of Sections 15A-1343(b) and 15A-1344(a), it would also operate to

eliminate absconding as a ground for probation revocation. As a practical matter,

those conditions laid out in Section 15A-1343(b)(3) make up the necessary elements

of “avoiding supervision” or “making [one’s] whereabouts unknown.” A defendant

cannot avoid supervision without failing to report as directed to his probation officer

at reasonable times and places. Neither can a defendant make his whereabouts

unknown without failing to answer reasonable inquiries or notify his probation officer

of a change of address.

 Accordingly, should we adopt a reading of Williams that prevents the State

from using the language of Section 15A-1343(b)(3) to describe violations of Section

 - 12 -
 STATE V. CROMPTON

 Opinion of the Court

15A-1343(b)(3a), then it is unclear what exactly would continue to constitute

“absconding” within the meaning of Section 15A-1343(b)(3a). As a result, violations

of Section 15A-1343(b)(3a) would likely cease to be allowed as a ground for probation

revocation.

 Alternatively, our dissenting colleague relies upon Melton to argue that the

State has failed to sufficiently show that Defendant acted “willfully” in violation of

Section 15A-1343(b)(3a).

 In Melton, this Court held that the State failed to present competent evidence

that a defendant willfully violated Section 15A-1343(b)(3a) where “the probation

officer could not testify with any specificity” and “the State’s evidence only include[d]

that a defendant failed to attend scheduled meetings, and the probation officer [was]

unable to reach a defendant after merely two days of attempts, only leaving messages

with a defendant’s relatives.” 258 N.C. App. 134, 140, 811 S.E.2d 678, 682-83 (2018).

 Relying on Melton, the dissent contends that the evidence produced by the

State was insufficient for the trial court to conclude that Defendant willfully violated

Section 15A-1343(b)(3a) because the State failed to show that “Defendant[,] in fact[,]

knew Defendant’s probation officer was attempting to contact him.” However, the

State’s evidence was more than sufficient to allow for the reasonable inference that

Defendant was aware his probation officer was attempting to contact him, knew how

 - 13 -
 STATE V. CROMPTON

 Opinion of the Court

to contact his probation officer, and willfully failed to make himself available for

supervision.

 The State was not required to prove beyond a reasonable doubt that Defendant

willfully violated Section 15A-1343(b)(3a). Murchison, 367 N.C. at 464, 758 S.E.2d

at 358. In a probation revocation hearing, the State must only provide sufficient

evidence “to reasonably satisfy the trial court in the exercise of its sound discretion

that the defendant willfully violated a valid condition upon which probation can be

revoked.” Newsome, ___ N.C. App. at ___, 828 S.E.2d at 498 (purgandum). Neither

was the State required to produce direct evidence of Defendant’s willful intent.

Walston, 140 N.C. App. at 332, 536 S.E.2d at 633. As previously discussed,

establishing a defendant’s willful intent “is seldom provable by direct evidence and

must usually be shown through circumstantial evidence.” Id. at 332, 536 S.E.2d at

633 (purgandum).

 In the instant case, the evidence put forth by the State was much more

compelling than that found in Melton. Defendant’s probation officer received a

voicemail from Defendant informing the officer that he would not be attending an

appointment on May 14, 2018. That same day, the probation officer returned

Defendant’s call and left a voicemail informing Defendant to report two days later.

From this evidence, the trial court could reasonably infer that Defendant was aware

his probation officer was attempting to make contact. As discussed at length above,

 - 14 -
 STATE V. CROMPTON

 Opinion of the Court

the officer never again heard from Defendant, even though Defendant knew he was

contacted by his probation officer and knew how to contact his probation officer.

 Moreover, Defendant’s probation officer was completely unaware of

Defendant’s whereabouts and exhausted all available avenues of contacting

Defendant over the course of ten days. During the officer’s absconding investigation,

the officer visited Defendant’s last known residence twice, called all of Defendant’s

references and contact numbers, called the local hospital, checked legal databases to

see whether Defendant was in custody, and called the vocational program Defendant

was supposed to attend. While the investigation was ongoing, Defendant also failed

to report to scheduled appointments on May 16 and May 23 without contacting the

officer. From this evidence, the trial court could reasonably conclude that Defendant

was attempting to thwart supervision.

 Accordingly, the State’s evidence was more than sufficient to allow for the

reasonable inference that Defendant was not only aware his probation officer was

attempting to contact him over the course of ten days, but that Defendant knew how

to contact his probation officer and willfully failed to make himself available for

supervision. Thus, the evidence was sufficient to reasonably satisfy the trial court,

in the exercise of its sound discretion, that Defendant violated Section 15A-

1343(b)(3a), a condition upon which probation can be revoked. N.C. Gen. Stat. § 15A-

 - 15 -
 STATE V. CROMPTON

 Opinion of the Court

1344(a); Newsome, ___ N.C. App. at ___, 828 S.E.2d at 498. Therefore, the conclusion

reached by this Court in Melton should not be controlling in this case.

 Following the State’s presentation of competent evidence establishing the

absconding violation alleged by Defendant’s violation report, the burden then shifted

to Defendant to demonstrate his inability to comply with the terms of his probation.

Newsome, ___ N.C. App. at ___, 828 S.E.2d at 498. At the revocation hearing,

Defendant admitted to absconding and failed to put forth any evidence demonstrating

that his failure to comply with the requirements of his probation was not willful.

 Based on the foregoing evidence, the trial court found that Defendant “willfully

and intentionally violated the terms and conditions of the probationary sentence by

absconding.” Having determined that the State satisfied its evidentiary burden, we

conclude that the trial court’s conclusion was not “manifestly unsupported by reason”

or “so arbitrary that it could not have been the result of a reasoned decision.” Maness,

363 N.C. at 279, 677 S.E.2d at 808 (citation and quotation marks omitted). Therefore,

the trial court did not abuse its discretion when it revoked Defendant’s probation and

activated his suspended sentence pursuant to Section 15A-1344(a).

 II. Imposition of Consecutive Sentences

 Defendant next argues the trial court abused its discretion when it declined to

consolidate his active sentences following revocation of his probation. According to

 - 16 -
 STATE V. CROMPTON

 Opinion of the Court

Defendant, the trial court imposed consecutive sentences under the mistaken belief

that it lacked the authority to modify Defendant’s original suspended sentences.

 Before activating a suspended sentence, the trial court may reduce the

sentence or change the structure of the sentence so that it runs concurrently with

other sentences. N.C. Gen. Stat. § 15A-1344(d). The trial court’s decision to reduce

a prison sentence or modify the structure of a sentence is reviewed for abuse of

discretion. State v. Partridge, 110 N.C. App. 786, 788, 431 S.E.2d 550, 551-52 (1993).

As previously noted, an abuse of discretion results “when a ruling is manifestly

unsupported by reason or is so arbitrary that it could not have been the result of a

reasoned decision.” Maness, 363 N.C. at 279, 677 S.E.2d at 808 (citation and

quotation marks omitted).

 In the present case, at the revocation hearing, Defendant requested that the

activated sentences run concurrently. Defendant’s probation officer requested that

the sentences run consecutively. The trial judge then addressed both requests,

stating in pertinent part,

 I’m not going to modify Judge Powell’s [original]
 judgment. I mean, he entered the judgment as he saw fit.
 All I have in front of me is the probation violation. So[,] I’m
 not going to modify Judge Powell’s judgment. I’m going to
 go [with] exactly what it was. . . . [I]t was a plea
 agreement, so he knew exactly what the deal was in the
 time. And I’m not going to second guess Judge Powell's
 wisdom on it.

 - 17 -
 STATE V. CROMPTON

 Opinion of the Court

 From the record, it is clear that the trial court recognized its authority to

modify the structure of Defendant’s sentences and, in the court’s discretion, simply

chose not to consolidate the active sentences. The trial court expressly acknowledged

its discretionary authority, stating, “I’m not going to modify Judge Powell’s [original]

judgment.” Therefore, Defendant’s argument that the trial court imposed consecutive

sentences under the mistaken belief that it lacked the authority to modify

Defendant’s original suspended sentences is meritless. Rather, the record indicates

that the trial court refused to modify the original judgment out of deference to the

superior court judge who originally sentenced Defendant and was more familiar with

the relevant facts and circumstances of Defendant’s case. Such a decision is not

manifestly unsupported by reason. Accordingly, we conclude the trial court did not

abuse its discretion when it declined to consolidate Defendant’s active sentences.

 III. Clerical Errors

 Lastly, Defendant argues the judgments upon revocation of probation

contained clerical errors regarding the violations found. Specifically, Defendant

contends that the trial court’s only probation violation finding made in open court

referred to the absconding violation in paragraph one of the probation officer’s

violation reports, while the written judgments entered referred to two additional

violations in paragraphs two and three of the officer’s violation reports. We agree

 - 18 -
 STATE V. CROMPTON

 Opinion of the Court

with Defendant that this discrepancy appears to be the result of clerical errors and

remand for correction of the written judgments.

 When a clerical error is discovered in the trial court’s judgment on appeal, it is

appropriate to remand the judgment for the limited purpose of correcting the error

“because of the importance that the record speak the truth.” Newsome, ___ N.C. App.

at ___, 828 S.E.2d at 500 (citation and quotation marks omitted). Where the trial

court’s findings made in open court do not align with the findings made in its written

judgment, our Court will remand for correction of the written judgment. State v.

Jones, 225 N.C. App. 181, 186, 736 S.E.2d 634, 638 (2013).

 Here, the trial court’s only finding relating to Defendant’s probation violations

was that “the defendant willfully and intentionally violated the terms and conditions

of the probationary sentence by absconding” as alleged in paragraph one of the

probation officer’s violation reports. However, in the written judgments, the trial

court also found that Defendant violated the conditions of his probation by testing

positive for an illegal drug (alleged in paragraph two of the violation reports) and

failing to report as directed by his probation officer (alleged in paragraph three of the

violation reports). Accordingly, we remand for the limited purpose of correcting the

clerical errors made in the trial court’s written judgments so that these judgments

align with the findings made in open court on October 22, 2018.

 Conclusion

 - 19 -
 STATE V. CROMPTON

 Opinion of the Court

 For the reasons stated herein, we affirm the trial court’s judgments. However,

we remand for the limited purpose of correcting the clerical errors described above.

 AFFIRMED IN PART AND REMANDED IN PART.

 Judge BRYANT concurs.

 Chief Judge McGEE concurs in part and dissents in part by separate opinion.

 - 20 -
 No. COA19-504 – State v. Crompton

 McGEE, Chief Judge, concurs in part, dissents in part, with separate opinion.

 Because I believe the State did not present sufficient competent evidence to

support a finding of willful absconding under the General Statutes and this Court’s

opinions interpreting them in State v. Williams, 243 N.C. App. 198, 776 S.E.2d 741

(2015), and State v. Melton, ___ N.C. App. ___, 811 S.E.2d 678 (2018), I concur in part

and respectfully dissent in part.

 The General Assembly enacted the Justice Reinvestment Act (“JRA”) in 2011

as “a part of a national criminal justice reform effort which, among other changes,

made it more difficult to revoke offenders’ probation and send them to prison.” State

v. Johnson, 246 N.C. App. 139, 143, 783 S.E.2d 21, 24 (2016) (citation and quotation

marks omitted).

 The enactment of the JRA . . . brought two significant
 changes to North Carolina’s probation system.
 First, . . . the JRA limited trial courts’ authority to revoke
 probation to those circumstances in which the probationer:
 (1) commits a new crime in violation of N.C. Gen. Stat.
 § 15A-1343(b)(1); (2) absconds supervision in violation of
 N.C. Gen. Stat. § 15A-1343(b)(3a); or (3) violates any
 condition of probation after serving two prior periods of
 CRV [confinement in response to violations] under N.C.
 Gen. Stat. § 15A-1344(d2). See N.C. Gen. Stat. § 15A-
 1344(a). For all other probation violations, the JRA
 authorizes courts to alter the terms of probation pursuant
 to N.C. Gen. Stat. § 15A-1344(a) or impose a CRV in
 accordance with N.C. Gen. Stat. § 15A-1344(d2), but not to
 revoke probation. Id.

 Second, “the JRA made the following a regular condition of
 probation: ‘Not to abscond, by willfully avoiding
 supervision or by willfully making the defendant’s
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

 whereabouts unknown to the supervising probation
 officer.’”

State v. Williams, 243 N.C. App. 198, 199-200, 776 S.E.2d 741, 742-43 (2015)

(citations omitted).

 Prior to enactment of the JRA, the General Statutes did not define the term

“abscond.” Williams, 243 N.C. App. at 205, 776 S.E.2d at 746. Instead, “the term

‘abscond’ ha[d] frequently been used when referring to violations of the longstanding

statutory probation conditions to ‘remain within the jurisdiction of the court’ or to

‘report as directed to the officer.’” State v. Hunnicutt, 226 N.C. App. 348, 355, 740

S.E.2d 906, 911 (2013) (citing State v. Brown, 222 N.C. App. 738, 731 S.E.2d 530

(2012); State v. High, 183 N.C. App. 443, 645 S.E.2d 394 (2007); State v. Coffey, 74

N.C. App. 137, 327 S.E.2d 606 (1985)). In a series of cases following the enactment

of the JRA, this Court recognized a purpose of the JRA was to place “a heightened

burden on the State to establish not only that a probation officer was unable to locate

or contact a defendant placed on supervised probation, but that such inability was

due to the willful efforts of the defendant.” State v. Whitmire, ___ N.C. App. ___, ___,

___ S.E.2d ___, ___, 2020 WL 70713, at *3 (citations omitted) (unpublished); see, e.g.,

Williams, 243 N.C. App. 198, 776 S.E.2d 741.

 In Williams, this Court reversed a trial court order revoking the defendant’s

probation on the grounds of willful absconding. Williams, 243 N.C. App. at 205, 776

S.E.2d at 746. We held that the probation violation report did not support a finding

 2
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

of absconding where the report merely realleged conduct that violated N.C.G.S.

§ 15A-1343(b)(2), which requires probationers to “remain within the jurisdiction of

the Court unless granted written permission to leave.” The probation violation report

alleged the defendant “[wa]s not reporting as instructed or providing the probation

officer with a valid address at th[at] time[,] . . . [wa]s also leaving the state without

probation[,] . . . [and] [d]ue to [the d]efendant knowingly avoiding the probation

officer and not making his true whereabouts known [the d]efendant ha[d] absconded

supervision.” Id. at 200-01, 776 S.E.2d at 743. This Court reasoned that “[p]rior to

the amendment of N.C. Gen. Stat. § 15A-1343(b) to include not ‘absconding’ as a

condition of probation, ‘abscond’ ha[d] traditionally been used to refer to other

conditions of probation[,]” specifically the requirements to “‘remain within the

jurisdiction of the court’ or to ‘report as directed to the officer.’” Id. at 205, 776 S.E.2d

at 745-46 (citations omitted). We held that, as a result of the JRA amendment to

make “absconding” a violation of the conditions of probation, merely re-alleging

conduct that violates N.C.G.S. §§ 15A-1343(b)(2) and (3) cannot support finding a

violation of N.C.G.S. § 15A-1343(b)(3a), even if the alleged violations are labelled

“absconding supervision” in the report. Id. at 205, 776 S.E.2d at 745-46. Thus, more

is required to support a finding of willful absconding under N.C.G.S. § 15A-

1343(b)(3a).

 3
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

 In Melton, this Court clarified that, in determining whether the allegations

support a finding of absconding, this Court is limited to considering support for the

specific allegations of absconding made in the violation report. See Melton, ___ N.C.

App. at ___, 811 S.E.2d at 681 (reviewing whether there was sufficient evidence of

absconding based on dates alleged in violation reports). We held the trial court erred

in its consideration of evidence from 2 November 2016, “on or about” when the

violation report alleged the defendant absconded, until 9 December 2016, when the

defendant was arrested, rather than from 2 November 2016 until 4 November 2016,

when the reports were filed. Id. at ___, 811 S.E.2d at 681. The rationale for this

holding was that the probation reports “provide a defendant with notice of the

allegations against him, as required by N.C. Gen. Stat. § 15A-1345(e)[.]” Id. at ___,

811 S.E.2d at 681 (citation omitted). This Court then held the trial court abused its

discretion because the State failed to show willful absconding for the relevant period

between 2 November and 4 November 2016 since, although the evidence showed the

officer attempted to contact the defendant, “there was no showing that a message was

given to [the] defendant or, more generally, that [the] defendant knew [the officer]

was attempting to contact her.” Id. at ___, 811 S.E.2d at 682.

 Notably, in addition to holding 2 November to 4 November 2016 was “the only

time period [this Court] c[ould] consider under the violation report and the court’s

written finding,” this Court in Melton also did not consider allegations of conduct

 4
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

made in the same violation report for other reportable conditions of probation in

determining whether the trial court’s finding that the defendant absconded was

supported by competent evidence. See id. at ___, 811 S.E.2d at 679-80 (noting that

violation reports alleged violations of N.C.G.S. §§ 15A-1343(b)(3) and (9) in addition

to N.C.G.S. § 15A-1343(b)(3a)).

 In the present case, the majority did not note this Court’s precedent in

Williams and Melton, nor the purpose behind the JRA, in holding that Defendant

absconded based on the probation violation report and facts before us. The record

shows that the violation report that included absconding, filed on 23 May 2018,

contained the following allegation for absconding (hereinafter, allegation 1):

 1. Regular Condition of Probation: General Statute
 15A-1343(b)(3a) “Not to abscond, by willfully avoiding
 supervision or by willfully making the supervisee’s
 whereabouts unknown to the supervising probation officer”
 in that, THE DEFENDANT HAS FAILED TO REPORT[]
 AS DIRECTED BY THE OFFICER, HAS FAILED TO
 RETURN THE OFFICER[’]S PHONE CALLS, AND HAS
 FAILED TO PROVIDE THE OFFICER WITH A
 CER[T]IFIABLE ADDRESS. THE DEFENDANT HAS
 FAILED TO MAKE HIMSELF AVAILABLE FOR
 SUPERVISION AS DIRECTED BY HIS OFFICER,
 THEREBY ABSCONDING SUPERVISION. THE
 OFFICER[’]S LAST FACE TO FACE CONTACT WITH
 THE OFFENDER WAS DURING A HOME CONTACT ON
 4/16/18.

As an initial matter, I note that, under Melton, the trial court and this Court are

limited by the allegations in allegation 1 of the violation report to considering

 5
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

evidence for absconding in the time period between 16 April 2018 and 23 May 2018,

the period between when the report alleged the absconding began and the date the

violation report was filed. Moreover, although Defendant’s probation officer alleged

Defendant had absconded since his “last face to face contact” with the probation

officer on 16 April 2018, the officer testified he only initiated the investigation for

absconding after Defendant “called him on [14 May 2018] and said he got in a fight

with his brother and couldn’t make his appointment that day,” and Defendant’s

probation officer called Defendant later that day and left him a message saying “let

me know what you work out for housing and report two days later.” Since Defendant’s

probation officer acknowledged Defendant affirmatively contacted him on 14 May

2018, I would hold there is no substantial evidence of absconding prior to that date.

 Furthermore, although the conduct in allegation 1 of the violation report is

characterized as “absconding supervision,” the allegations only describe violations of

N.C.G.S. § 15A-1343(b)(3). N.C.G.S. § 15A-1343(b)(3) provides the following are

regular conditions of probation:

 Report as directed by the court or his probation officer to
 the officer at reasonable times and places and in a
 reasonable manner, permit the officer to visit him at
 reasonable times, answer all reasonable inquiries by the
 officer and obtain prior approval from the officer for, and
 notify the officer of, any change in address or employment.

N.C.G.S. § 15A-1343(b)(3). “Fail[ing] to report as directed by the officer,” “fail[ing] to

provide the officer with a cer[t]ifiable address,” and “fail[ing] to make himself

 6
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

available for supervision as directed by his officer” are only allegations of violations

of N.C.G.S. § 15A-1343(b)(3)—a separate condition of probation from absconding.

Here, as in Williams, “[a]lthough the report alleged that Defendant’s actions

constituted ‘abscond[ing] supervision,’ this wording cannot convert violations of N.C.

Gen. Stat. §[] 15A-1343(b)[](3) into a violation of N.C. Gen. Stat. § 15A-1343(b)(3a).”

Williams, 243 N.C. App. at 205, 776 S.E.2d at 745. Therefore, even though Defendant

admitted to the allegations, allegations that fall within N.C.G.S. § 15A-1343(b)(3) do

not support a finding of willful absconding under N.C.G.S. § 15A-1343(b)(3a).

 Assuming the allegations do not only allege conduct that violates N.C.G.S.

§ 15A-1343(b)(3), all the alleged acts in allegation 1, taken together, still do not

establish a violation of N.C.G.S. § 15A-1343(b)(3a), because they do not adequately

allege willfulness by Defendant. In Melton, this Court held that “although there was

competent evidence that [the probation officer] attempted to contact [the] defendant,

there was insufficient evidence that [the] defendant willfully refused to make herself

available for supervision . . .” where “there was no showing that a message was given

to [the] defendant or, more generally, that [the] defendant knew [the officer] was

attempting to contact her.” Melton, ___ N.C. App. at ___, 811 S.E.2d at 682. Here, as

in Melton, the allegations in the report, even though admitted by Defendant, as well

as Defendant’s probation officer’s testimony that he attempted to call and to locate

Defendant and also called Defendant’s contacts, fail to show Defendant in fact knew

 7
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

Defendant’s probation officer was attempting to contact him. For instance, although

Defendant’s probation officer testified he left a message for Defendant, there was no

allegation that Defendant in fact received the message.

 The majority relies on State v. Newsome, ___ N.C. App. ___, 828 S.E.2d 495

(2019), to support its holding that Defendant absconded on the facts before us. In

Newsome, the defendant received a suspended sentence after pleading guilty to a

crime and was placed on probation. Newsome, ___ N.C. App. at ___, 828 S.E.2d at

497. During the defendant’s probationary period, his probation officer filed multiple

violation reports and his probation was modified and extended by the trial court for

an additional twelve months for his failure to comply with the monetary terms of his

probation. Id. at ___, 828 S.E.2d at 497. The probation officer filed a violation report

for absconding when the defendant failed to make himself available after multiple

attempts to contact him and he was arrested and held in custody until he posted bond.

Id. at ___, 828 S.E.2d at 497. Prior to his release, the defendant “had been instructed

to make contact with the probation officer within 72 hours of his release from

custody,” id. at ___, 828 S.E.2d at 497, which he failed to do. Id. at ___, 828 S.E.2d

at 497. The probation officer then called the defendant and, after seeing him enter

his residence, went to the door and spoke with the defendant’s mother, who told the

probation officer he was not home. Id. at ___, 828 S.E.2d at 497. The probation officer

filed an addendum to the prior violation report alleging the defendant absconded by

 8
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

failing to report as instructed and the trial court found the defendant had absconded.

Id. at ___, 828 S.E.2d at 497.

 This Court held the trial court did not abuse its discretion by finding that the

defendant had absconded because “[the d]efendant knew or should have known upon

being served with the [first absconding] violation report that he was considered to be

an absconder by his probation officer[.]” Furthermore, upon his subsequent release

from custody, the defendant knew or should have known that the instruction to make

contact with the probation officer “was more than a regular office visit,” and “[i]t was

a special requirement imposed upon defendant because he was considered to be an

absconder[.]” Id. at ___, 828 S.E.2d at 499. This Court held that “[t]he requirement

for [the d]efendant to contact the probation officer within 72 hours of release from

custody alerted [the d]efendant that his probation officer was attempting to actively

monitor him.” Id. at ___, 828 S.E.2d at 499. In holding the defendant willfully

absconded, this Court specifically noted that he “had not simply missed appointments

or phone calls,” but that he “knowingly failed to notify his probation officer of his

release from custody” and pursued “a willful course of conduct . . . that thwarted

supervision.” Id. at ___, 828 S.E.2d at 500.

 The majority’s reliance on Newsome is misplaced. First, in Newsome, the

defendant was placed on notice that making contact with his probation officer was “a

special requirement imposed upon [him] because he was considered to be an

 9
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

absconder,” whereas in this case Defendant had no such notice that he was considered

an absconder and subject to a special requirement to contact his probation officer;

rather, the appointments Defendant missed were “regular office visit[s].” Id. at ___,

828 S.E.2d at 499. Unlike the defendant in Newsome, who was specifically instructed,

there is no evidence Defendant here in fact heard the voicemail message from his

probation officer telling him to report in two days. Second, the defendant in Newsome

“had not simply missed appointments or phone calls,” but had actively avoided the

officer by failing to notify him after his release from custody and hiding in his

residence while his mother asserted he was not there; here, the only specific acts by

Defendant that were alleged by the probation officer in the violation report were

missing appointments and failing to return phone calls. See id. at ___, 828 S.E.2d at

497, 500. Finally, the defendant in Newsome “ma[de] himself unavailable for

supervision . . . for almost one month[,]” while Defendant in this case contacted his

probation officer on 14 May 2018, only nine days prior to the filing of the violation

report. Id. at ___, 828 S.E.2d at 499-500. For these reasons, the present case is

distinguishable from Newsome.

 A primary purpose of the General Assembly in enacting the JRA was to

“ma[k]e it more difficult to revoke offenders’ probation and send them to prison.”

Johnson, 246 N.C. App. at 143, 783 S.E.2d at 24 (citation and quotation marks

omitted). Consistent with the General Assembly’s purpose, I would hold that merely

 10
 STATE V. CROMPTON

 McGEE, C.J., concurring in part and dissenting in part

failing to contact a probation officer during this brief nine-day period, without more,

does not show sufficient evidence of willfulness to support a finding of willful

absconding under N.C.G.S. § 15A-1343(b)(3a).

 Because the State has not shown Defendant “willfully refused to make

[him]self available for supervision” during “the only time period we can consider”

(between 14 May 2018, when Defendant last contacted his probation officer, and 23

May 2018, when the violation report for absconding was filed), and because the

conduct admitted by Defendant only amounts to violations of N.C.G.S. § 15A-

1343(b)(3), I would hold the State’s evidence was insufficient to support a finding of

absconding under N.C.G.S. § 15A-1343(b)(3a) and the trial court abused its discretion

by revoking Defendant’s probation on that ground. Melton, ___ N.C. App. at ___, 811

S.E.2d at 682; Williams, 243 N.C. App. at 205, 776 S.E.2d at 745. I would reverse the

judgment of the trial court. Therefore, I dissent from the majority on this issue. I

concur with the majority’s holdings that the trial court did not abuse its discretion

when it declined to consolidate Defendant’s active sentences and that there were

clerical errors in the written judgment.

 11